## Hone's Executors *vs.* Van Schaick and others.

A devise of real estate to executors *in trust* to receive the rents and profits, and pay over the same to the children of the testator for the term of *twenty-one years,* is *void;* so, also, a *power in trust* to make partition at the end of such term is *void.*
Where, by the same will, the testator gave to each of his grandchildren who should be living at the time of his death the sum of $6,000, to be paid upon their attaining the age of twenty-one, or marrying, such payment, however, to be subject to the approbation of the parents of the grandchildren, and the time of payment to be fixed by them ; IT WAS HELD, that the legacies were vested and not contingent, and that the power given to the parents did not prevent the vesting of the legacies.
The bequest of the legacies to the grandchildren being in itself free from objection, and having no necessary connection with the *trust* adjudged to be void, *it was held,* that the will in respect to such legacies should be carried into effect, notwithstanding that the trusts created by the will were declared void : this decision is in accordance with *Hawley* v. *James,* 16 *Wendell,* 61, though not with *Root* v. *Stuyvesant,* 18 *Wendell,* 257.

APPEAL from chancery. The executors of the last will and testament of *John Hone* filed a bill in chancery, before the vice chancellor of the first circuit, against the widow, heirs, legatees and distributees of the deceased, to obtain a construction of the will as to the *validity of the devise to the executors in trust.* In July, 1831, the testator made and published his will, whereby,

Hone's Executors *v.* Van Schaick.

after a specific devise and bequest to his wife, he devised and bequeathed *the residue of all his estate, real and personal,* to his *executors* for the purposes of his will. He directed the executors to convert all his personal estate, with certain exceptions, into cash, and to invest the same in bonds and mortgages or in stock of the United States, to lease his real estate in the city of New-York, and to sell the portion thereof lying out of the city and invest the same in like manner as his personal estate : to the end that the rents and profits, interest and dividends thence accruing might form *one general fund* for the purposes of his will. He then directed the executors to pay certain annuities to his widow and to a niece, and to divide the residue of the income of the fund, from time to time as the same should accrue, equally among his seven children and the descendants of two deceased children. At the *expiration of twenty-one years* from the date of the will, or *as soon thereafter* as the executors should deem it discreet, they were directed to *divide* the real and personal estate among the heirs of the testator or their legal representatives. Special directions were also given as to the manner of making partition and *limiting the extent of interest* of the parties taking the same, so that the *children* of the testator should in no case take more than a *life-estate in the premises,* the ultimate *remainder being limited over* to their descendants or the then heirs of the testator. By a *codicil* made in August, 1831, the testator made a further bequest to his wife, and increased the annuities to be paid to her, and to his niece ; and he gave to each of his *grandchildren* who should be living at the time of his death the sum of $6,000, to be paid to them respectively upon their attaining the age of twenty-one, or marrying : such payments, however, not to be made *without the approbation* of the parents of such grandchildren to be expressed in writing ; the testator desiring, that, after the child was of age, or married, the parents would fix a discreet and proper time for the payment of the legacies. These legacies were directed to be paid out of the testator's personal estate, and all the residue of the estate, real and personal, was to remain subject to the provisions of the ori-

ginal will as modified by the codicil. In 1832, the testator died, leaving his widow, seven children and the descendants of two deceased children him surviving.

Upon the hearing of the cause before the vice chancellor, he decreed that the *devise of the real estate* to the executors and all the trusts declared upon such devise were *void*, and the direction to divide or partition the real estate after the expiration of the trust term of twenty-one years was also *void;* but held, that the bequest of $6,000 to each of the grandchildren was *valid*, and decreed the payment of the same in the manner directed by the testator. This decree, on an appeal to the CHANCELLOR, was affirmed : see the opinion of the chancellor, 7 *Paige's Ch. R.* 230, *et seq.*, where also may be seen a more full statement of the provisions of the will of the testator. A further appeal was taken, removing the proceedings into this court, where, after argument by counsel, and advisement by the court, the following opinion was delivered :

By Mr. Justice BRONSON. Every estate is void in its creation, which is so limited that the absolute power of alienation may be suspended for more than two lives in being at the creation of the estate. The lives must be designated, and *life* must in some form enter into the limitation. No absolute term, however short, can be maintained. The testator attempted, by means of a trust to receive rents and profits, to render his lands inalienable for a term, of which more than nineteen years remained unexpired at the time of his death. This he could not do. The statute had forbidden it. The whole trust estate, and the remainders limited upon it, are consequently void. *Coster* v. *Lorillard*, 14 *Wendell*, 265. *Hawley* v. *James*, 16 *id.* 61. The *power in trust* to make partition at the end of the term is subject to the same objection as the trust. It works an illegal suspense of the power of alienation. That this may be the effect of a power in trust, and that the power will then be void, has been adjudged by this court in the cases already mentioned.

The testator left seven ·children, and grandchildren represent-
ing two other children, his heirs at law, to whom the estate
descended, subject to the execution of the power.   They took
by descent, not by devise ; and whether they will ever take any
thing under the will, depends on their surviving the term.   The
The division is to be made among the heirs of the testator, and
such persons as may be their legal representatives at the end of
the twenty-one years.   Several grandchildren of the testator
were born between the time of his death and filing of the bill.
These and other grandchildren and other more remote descend-
ants of the testator, who were not in being at the time of his
death, and who may not be born until the last day of the term,
may be entitled to share in the partition.   It is evident, there-
fore, that at no time during the term can such an absolute fee in
the land be conveyed as may not be defeated, either in whole or
in part, by the execution of the power.   It could not be done if
all mankind were to join in the conveyance.

In *Root* v. *Stuyvesant*, 18 *Wendell*, 257, all the justices of the
supreme court were of opinion that the power of appointment
was valid, although there was a possible mode of execution which
the law would not permit.   That, however, was a power which
the grantees might execute or not at their pleasure.   It imposed
no duty on the tenants for life; it did not require them to do an
illegal act.   But this is a special power in trust, and is impera-
tive.   It imposes a duty on the grantees, the performance of
which may be compelled in equity for the benefit of the parties
interested.   1 *R. S.* 734, § 96.   The testator has directed such
a division and conveyance of his estate at the end of the term as
the law has forbidden.   Such a power cannot, I think, be upheld
for any purpose.

No distinction was made on the argument between the real
and personal property included in the trust.   1 *R. S.* 773,
§ 1, 2.

The only remaining question relates to the bequest of $6,000,
to each of the grandchildren of the testator living at the time
of his death.   It is said that these are contingent not vested

legacies; and that the contingency is of such a nature as to work an illegal suspense of the absolute ownership of the property. 1 *R. S.* 773, § 1, 2. If this were in truth a contingent bequest; if the legatees were only to take on condition that they respectively attained the age of twenty-one years or married, and on the further condition that their parents fixed on a time for the payment of the legacies, there would be no illegal suspense of the absolute ownership of the property. The gift would in that case either vest in each of the legatees at some period during his life, or never vest at all; and the power of disposing of the property could, at the most, only be suspended for a single life.

But I think the legatees severally took a vested interest immediately on the death of the testator. Where, as in this case, there is a present absolute gift, postponing the time of payment to a future day does not render the legacy contingent. *Patterson* v. *Ellis*, 11 *Wendell*, 259. If the testator had stopped after directing the legatees to be paid upon their attaining respectively the age of twenty-one years or marrying, the legacies would clearly have been vested. The clause which follows requiring the approbation of the parents cannot alter the case. It only provides for a further postponement of the time of payment. The gift is still absolute. The parents of any legatee have no other power over his legacy than that of fixing a discreet and proper time for the payment. A discretionary power of this kind will not prevent the vesting of a legacy. *Churchill* v. *Speake*, 1 *Vern.* 251.

If the legatees took vested interests on the death of the testator, there neither is nor can be any suspense of the absolute ownership of the property. Although the time of payment has not arrived, there are persons in being who can convey a perfect title to the property, including the right of present enjoyment. If this cannot be done by the legatees and executors together, it certainly may be accomplished by joining with the next of kin to the testator.

Although that part of the will which relates to the trust is illegal and void, it has not been pretended that another inde-

pendent provision, which is in itself free from objection must consequently be overthrown. The counsel seem to have been agreed that the rule of the common law and of our statute is still in force, and that the intention of the testator, so far as it is consistent with the rules of law, must be carried into effect, notwithstanding the decision of this court in *Root* v. *Stuyvesant*, 18 *Wendell*, 257. That case is in direct conflict, on this point, with the decision of this court in *Hawley* v. *James*, and seems only to be regarded as an adjudication between the amicable parties then before the court, and not as a precedent which can affect the rights of third persons.

I have arrived at the following conclusions : The trust to receive rents and profits, and the power in trust to make partition, are illegal and void. The bequest of legacies to the grandchildren, having no necessary connection with the illegal trust, and being in itself free from objection, is valid. These are the only questions which were discussed on the argument, and in relation to each of them I think the decree of the court of chancery was right, and that it should be affirmed.

Whereupon the decree of the chancellor was *unanimously* AFFIRMED.