THOMPSON and Wife *v.* CLENDENING and otheis, Executors of Carmichael.

A testator by his will devised his real estate to his executors in trust, to lease the same and receive the rents and profits, and to improve and build on the same, and for those purposes to mortgage any part of it. When either of his children arrived at lawful age, the trustees might sell all or any part of the real estate, if in their opinion it was then advantageous to do so, and the conduct and character of such child in their opinion justified them in selling. He directed that in any event, the whole of his real estate should be sold by the trustees, by the time his youngest child should arrive at lawful age. Upon such sales being made, the trustees were to pay and divide all the income and profits and proceeds of the sales, to and among the testator's four children by his then wife, and such other children as she might bear to him thereafter, their heirs and assigns equally; the issue of such as were dead, to receive the share of their parent. The trustees out of the estate or the income, were to pay as might be necessary, for the support and education of the children, during their respective minorities.

The testator then gave the residue of his personal estate, to the four children and such others as he should have by his then wife, to be paid and distributed to them equally, at the time of the sale or sales and distribution of his real estate.

He directed that his whole estate should be kept constantly accumulating, as much as could be, until the sale and division of his real estate; and he authorized his trustees to use and apply the whole or any part of the personal estate and its income, towards building on and improving, any of his real estate.

At the death of the testator the four children were infants; and he had no issue after the date of the will.

*Held*, that by the devise in trust, the power of alienation of the real estate might be suspended for more than two lives in being at the death of the testator, and it was therefore void.

The trust for accumulation was also held to be void.

*Held* further, that the bequest of the personal estate was void, as suspending its absolute ownership for a longer period than the statute allows.

The trust to mortgage, *was held valid, as a power in trust for the benefit* o$^f$ legatees.

The real estate having descended to the heirs, and a partition being sought, the trust power was directed by the decree to be extinguished, on a suitable provision being made for the legatees.

The testator gave a legacy to one of his heirs, who was excluded from the real estate by the will. On the devises being declared void, the heir was put to an election between the legacy and her share as an heir at law.

    February 7, 12 ; May 31, 1844.

The bill in this case was filed to obtain a partition of the real estate of which Daniel Carmichael died seised. The complainant, Eleanor Thompson, is a daughter of Carmichael. The defendants, are his widow, his four infant children and his executors. Mrs. Thompson was a child of the decedent by a former wife.

Carmichael died on the 3d day of January, 1842, leaving a will dated, November 12th, 1841, duly executed ; and after sundry specific legacies, he thereby gave $1,500 to Mrs. Thompson, payable out of his real or personal estate, as the case might require, and with what he had previously given to her and her husband, it was to be in full of his portion of the estate.

He then charged upon his estate a semi-annual payment for the reasonable support of his wife. The will then contained the following clauses :

"Item. I give, devise and bequeath all my real estate unto my son-in-law Major Thompson, Patrick Clendening, tallow-chandler, Isaac Stevens, late grocer, and Daniel Boyd, shoe-maker, all of the city of New-York ; To have and to hold the same to them, and the survivors and survivor of them, their heirs and assigns, and the heirs and assigns of such survivors and survivor for ever ; In trust to collect and receive the rents, income and profits thereof, to lease, improve, build on, and for that and other pursoses as may be necessary under this my

will, to mortgage the same or any part thereof. And upon the arrival at lawful age of any one of my children then living, if it shall then, in the opinion of the said trustees, the survivors or survivor of them, be advantageous so to do, and the conduct and character of such child shall, in the opinion of said trustees, justify them in so doing; to sell and dispose of all or any part of my said real estate, from time to time or otherwise, either at public or private sale, for such prices and upon such terms, as they shall judge most for the interest of my estate; and thereupon to make, execute, seal and deliver, all and every necessary deed and deeds, to the purchaser or purchasers thereof. The whole of my said real estate shall in any event be so sold and conveyed as aforesaid by the said trustees, by the time when the youngest of my children then living shall arrive at lawful age; and upon such sales being made the said trustees do and shall pay, distribute and divide, all the rents, income, profits and proceeds of such sales, to and among my four children, now born unto me by my said wife, and such other child or children as she may hereafter bear unto me, their heirs and assigns in equal proportions, share and share alike; the issue of such child or children as may then be dead to take however only the portion which his, her or their parent would have taken if living. And that the said trustees do and shall from out of the said estate, or the income thereof, contribute and pay as may be necessary, to the support and education of my said children, for and during their respective minorities.

"Item. It is my will, that my whole estate be kept constantly accumulating, as much as can be, until the sale and division of my real estate as above provided.

"Item. I give, devise and bequeath all the rest, residue and remainder of my personal estate, to my said four children by my said present wife, and to such other child or children as she may hereafter bear unto me, to be paid and distributed among them in equal proportions at the time of such sale or sales and distribution of my said real estate; the issue of such as may then be deceased to take the portion only which his, her or their parent would have taken if living.

Thompson *v.* Carmichael's Executors.

" Item.   I authorize and empower the executors hereof, to use, appropriate, pay and apply, the whole or any part of my personal estate and the income thereof, towards building and improving on any of my real estate."

The testator appointed his wife, and Isaac Stevens and Daniel Boyd, to be the guardians for his minor children ; and he constituted Thompson, Clendening, Stevens and Boyd, and the survivors and survivor of them, to be the executors of his will. The four infant defendants were living at the date of the will, and he had no issue subsequently.

Thompson did not qualify as executor, and neither he or his wife have accepted the bequest of the $1500.   Clendening declined to act as executor, and Stevens and Boyd, proved the will.

The complainants insisted in their bill, that the devises of the real estate, and all the trusts in relation thereto, and powers over the same, expressed in the will, are void ; because they are an attempt to render the real estate inalienable for a longer term than the continuance of two lives in being at the death of the testator.   And that the bequest of the residue of the personal estate is invalid for the same cause.

The bill prayed that those devises and bequests might be declared void accordingly, that an account might be taken of the personal estate, and distribution thereof made ; and that partition be made of the real estate among the five children and heirs at law of the decedent.

The widow was an alien, and it was conceded that she was not entitled to dower, in case of an intestacy.

The decedent left a valuable real estate and some personal property.   The defendants insisted on the validity of all the provisions contained in the will.

*C. O'Conor*, for the complainants, made the following points :

I. The devise of the real estate is absolutely void, and the said real estate descended to the heirs at law.

1. Notwithstanding the discretionary power given to the executors to sell whenever any of the children shall attain the age of twenty-one years ; yet the term of inalienability *might*

Thompson v. Carmichael's Executors.

be continued beyond the duration of two lives in being at the creation of the trust estate; for if the three elder of the four children were to die under age, the estate would then still, ac- cording to the terms of the trust estate, be inalienable until the fourth should have attained her majority. *Hawley* v. *King*, (16 Wend. 61.)

2. As to the *real estate*, there is no word in the will indi- cating an intent to *give it* to the children. They take under the will, nothing but the *proceeds* of the *sale ;* and the power of sale being void, they can take nothing.

1. The words " heirs," " issue," and " children," are all sy- nonymous in this will.

2. There being no words of gift whatever, the gift of the proceeds arises only from the direction to *pay.* It is, there- fore, a contingent legacy to the children or their issue, depend- ent upon their being in esse to take at the time of distribution.

II. The disposition of the personal estate is also void.

III. There should be a decree for partition between the five children, as heirs at law of the deceased.

*R. Emmet,* for the defendants, submitted the following points.

I. It is the duty of the court to give effect to all parts of the will not clearly repugnant to the rules of law. Therefore,

1. The specific legacies which are not dependent on the de- vise in trust of the real estate ;

2. The provision for a reasonable support for the widow, as a substitute for dower ;

3. The bequest of the residue of the testator's personal pro- perty ; should all be upheld.

II. The trusts created by the devise of the real estate, so far as their purposes are to lease the land and receive the rents and profits, to be applied for the support and education of the minor children during minority, and to accumulate the same and sell

the land for the benefit of the *cestui que trusts*, are valid express trusts.

III. The estate created by the devise in trust of the real property, not being a future estate, was not void in its creation; and the suspension of the absolute power of alienation thereby created could only be affected by the death of two of the *cestui que trusts*, in being at the creation of the estate, previous to any one of them having attained the age of twenty-one years.

IV. If it should be held that the devise of the real estate is void, and that such estate descended to the heirs at law, the legacy of fifteen hundred dollars to the complainant, Eleanor Thompson, has been renounced.

V. If the bequest of the residue of the personal estate should not be preserved, such residue should be distributed, as is provided by law in cases of intestacy.

THE ASSISTANT VICE-CHANCELLOR.—The important question in this case, is upon the validity of the devise of the testator's real estate to his executors, upon the trusts expressed in the will. They are to receive the rents and profits, to lease the lands, and to improve them by building and otherwise, and to mortgage them, if necessary, for any of the purposes of the will. They are not authorized to *sell* the real estate for any purpose, until some one of the four minor children attains the age of twenty-one years. They are required to sell and convert it into money, when the youngest of the children living shall have attained that age. And they are clothed with a discretionary power to sell all or any of the real estate, on the arrival of any one of the children at lawful age, if in the opinion of the executors it shall be advantageous to do so, *and* the conduct and character of such child should in their opinion justify them in so doing. The whole estate was to be kept accumulating as far as practicable; and whenever such sales were made, the executors were to pay and distribute all the rents, income,

and proceeds of the sales, to and among the four children, and the issue of such as were dead.

It is contended by the complainants, that these provisions of the will contravene the statute which limits the inalienability of estates, and that they are therefore void.

The result of the devise undoubtedly is, that in the event of the three elder children dying during their minority, the alienation of the estate would be suspended beyond the limit of two of the lives in being that were principally interested in the trust. So in the more probable event that the *two* elder children should die during their minority, the effect would be the same. Should all the children live till one becomes of age, the suspension of the power to sell might then be terminated, in the discretion of the trustees; and they may all live until the youngest of the four attains his majority, and the estate *must* then be sold.

The mere statement of these various contingencies, (and I have mentioned but a few of the combinations of events which might reasonably be suggested,) will suffice to show that the determination of the suspended power of alienation, depends partly upon the four lives of the children, and partly upon the time when the youngest surviving child shall become of age; and its *utmost limit,* is the number of years intervening between the death of the testator and the date when the youngest child, if he lives, will attain the age of twenty-one years. The latter period is the only one which admits of any definite limitation; because, if we rest it upon the event of the *youngest survivor* becoming of age, we place it upon a contingency that may never happen. If he should die while a minor, but after his brothers and sisters were of age, the power to sell would become operative immediately.

The case appears to me, after full consideration, to fall directly within the decision of the Court for the Correction of Errors on the will of William James. *Hawley* v. *James,* (16 Wend. 61.) There the trust term was to continue until the youngest of the testator's children and grandchildren, living at the date of the will and attaining the age of twenty-one years, should have attained that age.

At the date of the will, the testator had thirteen children and

grandchildren who were minors, one of whom wanted ten days of being a year old at the testator's death. The duration of the trust term therefore, could not in that case, continue beyond twenty years and ten days from the death of Mr. James. Its termination might occur in a much shorter time by the deaths of the younger portion of the thirteen. Thus like the case before me, it depended upon the lives of the beneficiaries, bounded as its utmost limit, by the majority of the youngest surviving child.

The Court of Errors held the limitation to be void, as repugnant to the fifteenth section of the statute relative to the creation and division of estates.

Mr. Justice Bronson, in his learned and most able judgment in *Hawley* v. *James*, said that "the term was limited by the continuance of the minorities, but as those might cease by death as well as by lapse of time, it necessarily depended in part on the continuance of life. There is no possible form in which the case can be fairly stated, without showing that the duration of the term depended upon lives, and as there were thirteen minors in the class, it depended on more than two lives. This trust then might continue and the power of alienation be suspended for a longer period than the statute allows." (pp. 167, 168.)

He says farther, "the question is, not whether the trust *probably will*, but whether it *can* transgress the statute rule." "The statute has given lives as the measure, and nothing else. (p. 171.) Life must in some form, enter into the limitation. No absolute term, however moderate, or however short, can be maintained; and no uncertain term, the utmost limit of which is not bounded by lives, can be sustained."

The same result was reached by the Chief Justice in a well reasoned argument, and he thus states his conclusion: "The trust term is void, 1. Because it is an estate limited to depend upon thirteen lives, as well as upon minorities, and may postpone the power of alienation for a longer period than is allowed by law. 2. That if it should be considered properly, a term for 20 years and 10 days, determinable upon thirteen minorities, it is still void because the power of alienation may be suspended for more than two lives of the thirteen individuals upon which

it depends; and 3. Because the trust term is not limited to depend upon one or two specified lives in being within the true construction of the 15th section; the only measure for the suspension of the power of alienation since the adoption of the Revised Statutes, being a life or lives," (p. 133, 134.) Two other members of the court of last resort, pronounced opinions concurring with those which I have stated; and the judgment of the court in that case, appears to have established that by the 15th section of the statute referred to, the suspension of the power of alienation must be limited by two lives in being, designated either by naming two persons, or as the two first lives which shall fall, in a class of several individuals named or definitely described. That the limit may be for any term of years, or on any contingent event, expressing that it is on condition that the two lives shall so long continue; but it cannot be made upon an event or condition which by possibility may suspend the power of alienation beyond the two lives specified. (See decree of the court in *Hawley* v. *James*, (16 Wend. 274.)

The Chancellor, in the case of *Gott* v. *Cook*, (7 Paige, 521, 540,) says that the decision in *Hawley* v. *James*, settles the construction of the statute to be that an estate is void in its creation, if it is so limited that it can by any possibility continue beyond two lives in being at the creation of the estate.

(And see *Van Vechten* v. *Van Veghten*, 8 Paige's R. 104, affirmed in the Court for the Correction of Errors, in December, 1841.)

In *Hone's Executors* v. *Van Schaick*, (7 Paige's R. 221,) the Chancellor stated the result of the decision in *Hawley* v. *James*, substantially as he did subsequently in *Gott* v. *Cook*.

The Court for the Correction of Errors, affirming the Chancellor's decree in *Hone* v. *Van Schaick*, (20 Wend. 564,) decided that a limitation for *twenty-one years*, was contrary to the statute; thus again reiterating the principle that the estate must be limited upon lives, and upon nothing else.

Concurring with these various expositions of the principle which must control in suspensions of the power of alienation, and re-affirming the well settled rule in England, is the recent case of *Ibbetson* v. *Ibbetson*, (10 Simons, 495,) affirmed by

Lord Cottenham in 5 M. & C. 26. The trust there was of plate, paintings, furniture, &c., and they were to vest absolutely in the first tenant in tail of the mansion house, &c., who should become twenty-one years of age. It so happened that the first tenant in tail, under the devise of the manor, became of full age, and he was living at the testator's death.

This, the court said, was an accident, which could not affect the construction. That the estate must be certain so as to vest within the time allowed by law, in the person described. And they held the bequest void for remoteness, because it might *possibly* suspend the vesting of the property beyond the period allowed by law.(a)

The learned counsel for the defendants in an ingenious argument in support of the will, contended that the devise was of a *present estate*, and therefore not within the fifteenth section of the statute relative to the creation of estates.

The Chancellor decided against this construction in the Lorillard Will Case, *Coster* v. *Lorillard*, (5 Paige's R. 219.) The fifteenth section is not restricted to future estates, and if it were, the 36th section of the same article, places trusts for accumulation, upon the same footing as future estates.

The 17th and 19th sections were also referred to as sustaining the defendants' construction. But those sections apply to *life estates* in remainder, or to remainders limited upon estates for life, and are not applicable to the devises contained in the will in question.

In reference to the direction to accumulate, it may be observed farther, that its limit as to time is taken away by the avoidance of the principal trust.

There is another consideration applicable to this, as well as to the defendants argument that with the aid of a court of equity, the real estate is alienable by the trustees. The estates of the minors, except in sufficient of the property or its income to support and educate them, is not only future, but uncertain. If either of them dies before the arrival of the period fixed for

(a) To the same effect, see *Boughton* v. *James*, (1 Colly. Ch. Rep. 26.)

a sale and distribution, without issue, the survivors will take his proportion.

Therefore, there would be no person *in esse* having a vested interest in the bulk of the estate, to join in its sale, even if the court should disregard the inhibitory provisions of the statute relative to uses and trusts. And an accumulation for persons not in being when it commences, and therefore not specified, does not appear to be permitted by the statute.

The devise to the trustees, in the case before me, must therefore be declared void as to the trusts for the four minor children and the trust for accumulation. As this result lets in Mrs. Thompson to share as an heir at law, she must elect between such share and her legacy under the will.

There is a *power to mortgage* contained in the devise of the real estate to the trustees, which may be sustained for the benefit of the widow as a legatee, and to satisfy the charge made upon the whole estate in her favor by the will. (1 Rev. Stat. 728, § 55, subd. 2.) This is, however, a mere *power in trust*, which does not interrupt the descent of the real estate to the heirs at law. And in the event of a partition of the lands, and the substitution of some other satisfactory provision for the widow's support, this trust power may be extinguished. This was done in the partition of the estates of Hannah Murray and Hannah L. Murray, by the decree of the Chancellor, operating upon powers in trust which were much more ample than those in the will of Carmichael. *Murray* v. *Ogden*, (April 19, 1842 ; 2 Barbour's Notes of the decisions of the Chancellor, p. 23.)

The will does not clothe the executors with any power to *sell* the real estate, except for the void purposes already mentioned.

The direction for a conversion is remote in point of time, and the devise contemplates the continuance of the realty *in specie*, for a long period, as is shown by the provisions relative to renting, improving, and building upon the lands. I have, therefore, considered the property as real estate.

If it were to be treated as converted into personalty at the death of the testator, the result would be the same, unless I

have erred in my views as to the contingency of the gift to the children, and as to the uncertainty of the persons for whose benefit the accumulation is to be made. For by the Revised Statutes, future estates in personal property, and trusts for its accumulation, are subjected to the same restrictions as similar estates and trusts in lands.

As to the bequest of the residue of the personal property to the four minor children. The sixth item of the will is a positive direction that the *whole estate* of the testator be kept constantly accumulating as much as can be, until the sale and division of his real estate as before provided.

This accumulation includes the personal estate.

The bequest of that estate to the children is further qualified, by the provision that it is to be paid to and distributed among them at the time of the sale and distribution of the real estate. Then the issue of the deceased children were to take the portion of their parent. The authority to the executors to apply the personal property towards building on the real estate, tends the more effectually to suspend its absolute disposal.

Taken together, the will directs all the personal estate except what is used in building and improving the lands, to be accumulated until the time fixed for dividing the lands, and then to be divided among the children and their issue. When the eldest child shall become of full age, he cannot alien or bequeath the fourth part of the personal property, because if he should die before the youngest becomes of age, that fourth part goes to his issue, who take under the will, and not from him. So of the second and the third child of the testator. And until the youngest of the four children becomes of full age, which may be after the death of two of the elder children, the ownership of the residue of the personalty will not be ascertained so that it can be absolutely disposed of.

The personal estate is therefore in the same situation in this respect, as the lands devised ; and as I have already stated, the will suspends the power of aliening the lands beyond the limits prescribed by law.

The same limitation is imposed upon the suspension of the

absolute ownership of personal property. (1 Rev. Stat. 773, §
1.) And the bequest of the personalty under this will must be
avoided with the devise of the lands.

The provision for the widow is a charge upon the real estate
in the hands of the heirs, for which suitable protection must be
afforded by the decree.

The complainants are entitled to a decree accordingly, with
the usual reference to a master in partition causes.