EMMONS v. CAIRNS and others.

The court of chancery will not sustain a bill for the mere purpose of construing a will. It is only when questions under the will, arise incidentally in the exercise of the legitimate powers of the court, where it has jurisdiction for some other purpose, that such construction can be given ; as in cases of trust, account and the like.

Such jurisdiction is maintained, at the suit of one claiming the personal estate after the determination of a life interest, asking to have an account taken and the fund secured ; so far as to determine the right of the claimant to the remainder in such fund.

A testator gave to his wife for life all the income, rents and profits of his real and personal estate ; and after her death gave the like interest to T. for life, out of which she was to support three infants, W., J. and E. Next, he gave the whole rents and income after her death, to W., J. and E. for life, as joint tenants ; and then gave the residue of his estate to E. absolutely and in fee, first providing for her fifty thousand dollars when she should arrive at age. Then followed a provision that if E. should die without children or issue, that the whole residue of his estate should go to his cousins.

In a suit by one of the next of kin, in which a construction of the will as to the personal estate became requisite ;

Held, 1. That the two first life estates in the income and profits, were valid.

2. That the subsequent gifts of the personal estate were void as suspending the absolute ownership more than two lives in being at the death of the testator.

3. That the legacy of fifty thousand dollars to E. was contingent on her attaining her full age, and was void for the same cause.

4. That T. was not entitled to enjoy the personal property for life, in specie ; but that it must be converted and permanently secured, so as to give her the income, and preserve the capital for the next of kin.

January 10 ; Feb. 25, 1845.

THE bill in this cause was filed in March, 1840, by John Emmons, claiming to be one of the collateral paternal relatives, and as such one of the heirs at law and next of kin of George Rapelje, who died May 5th, 1835, seised and possessed of a very large real and personal estate.

His last will and testament, dated April 5th, 1832, was in the words following :

"I George Rapelje of number three hundred and ten (310) Broadway, of the city of New York, gentleman, being of sound and disposing mind and memory, do make this to be my last will and testament, in the manner and form following, hereby re-

voking all others. I request as soon as convenient after my death, that all my just and lawful debts and funeral charges be paid. I desire no parade at my funeral; my remains to be taken to East Chester Church burying ground, and deposited by the side of my parents.

" *First.* I give, devise and bequeath unto my wife, Susanna Elizabeth, all the income, rents, issues and profits of all my estate, both real and personal, for and during her natural life, and for and in lieu of her dower, and hereby appoint her executrix of this my will during her life.

" 2d. Item. After her death, I give, devise and bequeath as a legacy unto all the lawful children of her brother, Benjamin B. Provost, seven thousand dollars to be divided among them, also the silver plate, library of books, furniture and whatever other articles, that were the property of Bishop Provost she may have remaining in her possession at her death, on condition the one hundred and fifty dollars I now yearly pay him, must cease and determine. I also give, devise and bequeath unto them all the Irish estate near *Cork,* both real and personal now standing in my name, and all my right, title, I or my wife may have thereto, to them and their heirs forever, as joint tenants : those before legacies are left to them, and the income of them to be appropriated to the support and maintenance of himself, wife and children, while they remain together, or rather of those who reside at home, to be the legacies before named, not divided among them till they may all separate or marry, but to be and remain as a fund the income of which to be used as just stated.

" 3d. Item. I give, devise and bequeath immediately after the death of my wife, the whole income, rents, interests, issues and profits thereof of all my estate, both real and personal, to Ann Eliza Taylor, widow of William Taylor, late merchant of New York, for and during her natural life, out of which income aforesaid, she must support well, educate, board, lodge and clothe the following three persons or individuals : her son William Paul Taylor, aged about seventeen, and is now a midshipman in the U. S. navy, and a short time since sailed in the U. S. ship of war Potomac ; a female girl named Ann Janette Smith, aged about between ten and eleven, now at Bethelehem school in Pensylvania ; and

a girl named Ellen Eliza Smith, aged about six years, now in the said Ann E. Taylor, who resides at No. 80 Houston-street, New York; and who is to designate and identify the two female children and her son William Paul Taylor as afore-named.

"4th. Item. I give, devise and bequeath unto the children or the issue of Ann E. Taylor, ten thousand dollars after her death; also to the children of William Paul Taylor, and also to children of Ann Janette Smith ten thousand dollars for all the children together, of each of them, should they have any forever.

"5th. Item. I give, devise and bequeath unto the three children before named, that is to say, William Paul Taylor, Ann Janette Smith, and Ellen Eliza Smith, the income afore-named, of all my estate both real and personal, as possessed by my wife and Ann E. Taylor, provided and in case they should outlive her, the said A. E. Taylor, and for them to hold the same as joint tenants for and during their natural lives, and no longer.

"6th. Item. I give devise and bequeath the rest, residue and remainder of the whole of my estate both real and personal, unto the child above and before named, Ellen Eliza Smith, who I here consider and make my principal heir to my estate, that is to her and her children if she should have any forever, to them and their heirs; and further, I leave her when she arrives at age in her own right and disposal, fifty thousand dollars, any thing herein contained to the contrary notwithstanding. And I hereby nominate and appoint her third executrix to carry the provisions of this my last will into effect, with full power to execute the same.

"7th. Item. It is my will and desire that in case, and is upon this express condition, that in case of the females, either A. E. Taylor, Ann Janette Smith and Ellen Eliza Smith, should marry, they are to keep, and the property herein and hereby to them devised or given, under their own control as if they were not married, and their husbands to have no power over it whatever, and it must hereinby be distinctly understood to be left to them in their own right forever.

"8th. Item. I hereby appoint Ann Eliza Taylor before named to be trustee and guardian to the three before named children, and to have their entire management of them during her lifetime,

and also the property above to them devised for their benefit and advantage, to manage as she may deem most proper. I also herein and hereby appoint her after the death of my wife, second executrix, to be duly authorized and empowered to take the sole and full control of all my property agreeable to the letter and spirit of this my will and testament, and to carry the provisions of the same and intentions into effect.

" 9th. Item. In case the child before named, Ellen Eliza Smith, should die without leaving issue children, issue or heirs of her body, then and in that case and in no other, I give devise and bequeath the whole and all the remainder and remainders, reversion and reversions, rents, issues and profits of all and the whole of my estate, that may then remain, for ever unto all my paternal and maternal cousins, being my only legal heirs, and their children or grand or great grandchildren, the children of or grand or great grand children surviving, to take the part or share of the parent or parents deceased, and all to take as tenants, that is as joint tenants, any cousin of mine dying without leaving issue, their part or share to go to the surviving cousin of mine of the full blood, or their children grand or great grandchildren as the case may be."

The testator left his wife surviving, but he left no descendants. His widow proved his will in November, 1835, and possessed herself of the estate, which she held until her death on the 30th of January, 1840.

In the meantime Ann Eliza Taylor had married William Cairns, Jr., and on the death of Mrs. Rapelje claimed by virtue of the will to receive and have the rents, issues and profits of the whole real and personal estate during her life; qualified as executrix pursuant to the will; and possessed herself of the property.

A tract of about one hundred acres in the outskirts of the city of New York, called the Glass House Farm, composed a part of the real estate. This farm was largely assessed for the expenses of opening streets and avenues through it and in its vicinity, and for other improvements occasioned by the rapid growth of the city. Many of these assessments, and some taxes which

were imposed during the lifetime of Mrs. Rapelje, were left unpaid; together with some of those which accrued subsequently.

Of the personal property, a large amount consisted in bonds and mortgages.

William P. Taylor, named in the will, died intestate, leaving no issue, before this suit was commenced.

George Rapelje left a great number of distant collateral relatives, the descendants of his grandfather's brother and sister.

The bill alleged that the devises and bequests in the will were void for various reasons. That the real estate was exposed to be sold for the unpaid taxes and assessments, through the omission of the respective executrixes to apply the rents and profits to their payment. That the personal estate was liable to be wasted in the hands of Mrs. Cairns. That the complainant, with William P. Powers, and seventeen other persons who were named as defendants, were heirs at law and next of kin of the testator. And that many other persons whose names were unknown to the complainant, claimed to be such heirs at law and next of kin.

The bill prayed that the will might be declared void, and be set aside, and that the complainant and the other heirs at law and next of kin on the paternal side, might be declared seised of the real estate and possessed of the personal property of George Rapelje; and if the life estates of the widow and of Mrs. Cairns were sustained, then that the unpaid taxes and assessments should be discharged out of the rents and income of the whole estate; and that the personal property should be secured so as not to be wasted or lost.

Cairns and his wife, Ann Janette Smith, Ellen Eliza Smith, and the persons in the bill described as heirs and next of kin of George Rapelje, were made parties to the suit. The two Miss Smith's, being infants, answered by their guardian *ad litem*.

Cairns and wife, in their answer, insisted on the validity of the will in all its parts, and that the court had no jurisdiction to construe it or decide on its effect, at the suit of the complainant. They stated that they had paid the taxes which Mrs. Rapelje left unpaid; but denied that they were required to apply any of the rents, issues or income of the property to the payment of

those taxes or the assessments which she omitted to pay. And they denied that there were any taxes unpaid which Mrs. Cairns ought to pay. That the city improvements had much injured the use and enjoyment of the Glass House Farm, and were a positive loss and great detriment to Mrs. Cairns life estate in that farm. They denied that the personal property was liable to be wasted or lost.

During the pendency of the suit the parties in interest procured the passage of a law, by which this court was authorized to decree a sale of real estate to pay taxes and assessments where several persons had estates therein ; and to compel an equitable apportionment. (Laws of 1841, ch. 341, p. 325.) Under this statute, Cairns and wife filed a bill against Emmons, the Miss Smith's and the parties claiming as heirs of Rapelje so far as they were known ; and obtained a decree under which three or four hundred lots of the Glass House Farm were sold, and the unpaid taxes and assessments were satisfied out of the proceeds, before this cause was brought to a hearing.

The cause came on to be heard on the pleadings and proofs.

*N. Dane Ellingwood,* for the complainant.

*Jona. Miller,* for Cairns and wife and A. and E. E. Smith.

*W. Curtis Noyes,* for Powers and others.

THE ASSISTANT VICE-CHANCELLOR.—This bill cannot be sustained for the mere purpose of giving a construction to the will of George Rapelje. A decision of the legal questions involved in its construction is not within my province, unless those questions arise incidentally in this court in the exercise of its legitimate powers, and where the court has obtained jurisdiction of the case for some other purpose. (*Bowers* v. *Smith,* before the Chancellor.)(*a*)

_____

(*a*) Since reported, 10 Paige, 193.

Emmons v. Cairns.

There are two grounds of jurisdiction which are pressed by the counsel who desire a judicial construction of the will.

First. Assuming that the devise to Mrs. Cairns is to be maintained, she as the tenant for life of the Glass House Farm, received her estate charged with the payment of a just proportion of the assessments then outstanding upon the various portions of that farm; and as such tenant is bound to pay a just proportion of the assessments which have since been imposed, and which hereafter may be imposed thereon.

In connection with this, it is urged that the peculiar circumstances of the property imperiously require that its ownership should be ascertained and declared, long before any of the future estates created by the will can vest in possession; or if those are void, before the heirs can become seised in possession so that their estates will be available for the protection of the property. And that the whole estate which is of great value, will be utterly lost to the owners, by reason of the heavy assessments for urban improvements to which it has been and will be exposed.

The proceedings in the suit of *Cairns and wife* v. *Emmons and others*, instituted subsequent to the filing of this bill, forcibly illustrate the argument arising from the assessments.

In respect of Mrs. Cairns's life estate being liable to a portion of the assessments, she admits her liability as to those which have been imposed since her estate vested in possession, but denies any liability for any part of the prior assessments.

Second. The other ground of equitable jurisdiction relates to the personal estate alone, and is addressed to the taking an account of the same and its preservation for those entitled after the death of Mrs. Cairns.

I will first look into the case upon this point.

The testator devised and bequeathed, immediately after the death of his wife, the whole income, rents, issues and profits, of all his estate both real and personal, to Ann Eliza Taylor, (now Mrs. Cairns,) for and during her natural life.

This gift is unquestionably valid, whatever may be the fate of the subsequent limitations attempted to be made in the will.

The complainant claiming to be one of the heirs at law and next of kin of the testator, and insisting that all those limitations

are void, alleges that Mrs. Cairns, the tenant for life, has possessed herself of a large amount of bonds, mortgages and other personal estate of the testator, which he is apprehensive will be wasted or squandered, and which he prays may be secured for the benefit of the next of kin.

It is well settled, that such a bill will be sustained, where there is proof of waste, or of danger of waste, to the property. And in the absence of such proof, the court will enforce the tenant for life to make an inventory of the specific property bequeathed, so that those in remainder may be enabled to identify it, and enforce its due delivery when their right to its possession accrues. (Jeremy's Eq. Jur. 350 to 353; 1 Story's Eq. Jur. § 604; 2 ibid. § 843, 844; *Covenhoven* v. *Shuler,* 2 Paige, 122, 132; *Slanning* v. *Style,* 3 P. Will. 336; *Shirley* v. *Ferrers,* 1 ibid. 5, note by Cox; *Leeke* v. *Bennet,* 1 Atk. 471; *Bill* v. *Kinaston,* 2 ibid. 82.)

Mrs. Cairns is now the executrix of the will, and she does not traverse the charge in the bill that she holds such personal estate, but she denies that it is liable to be wasted or lost.

The court having jurisdiction of the subject matter for the purpose stated, it is necessary in order to exercise it in favor of the complainant, that his title to the future enjoyment of the property should be admitted or proved. (*Brown* v. *Dudbridge,* 2 Bro. C. C. 321; Jeremy's Eq. Jur. 350; 2 Story's Eq. Jur. § 1490.)

The complainant's title is fully stated in the bill, but it is not admitted in the answer of Cairns and wife. And as he claims adversely to the infant defendants, he must maintain his title by proof as against them, even if the adults had expressly admitted it. In this aspect of the case, the infants were necessary parties to the suit; for the complainant seeks relief, and a declaration of his title in a specific fund, in the hands of Mrs. Cairns, which fund by the will is given to the infants.

His title is to be established, first by proof that he is one of the next of kin; and secondly by convincing the court that the bequests in the will to these infant defendants are void and therefore are no obstacle to his right of succession.

The pedigree of the complainant as one of the next of kin and heirs at law of the testator is sufficiently proved.

It remains to consider the provisions of the will bequeathing the property to Janette and Ellen Eliza Smith.

The testator first gives a life estate in the property, both real and personal, to his wife; with a remainder therein for life to Mrs. Cairns. The legacies which are payable after the death of his wife, do not affect this question.

He then creates a joint tenancy for life in behalf of W. P. Taylor and Janette and Ellen Smith. Next he gives the residue of his estate to Ellen Smith and her children, (if she should have any,) forever. But this bequest is presently qualified by a provision that in case she should die without issue or heirs of her body, then the whole of his estate remaining is to go to his paternal and maternal cousins and their descendants as joint tenants, and with cross remainders between them.

There is also a bequest of fifty thousand dollars to Ellen Smith, when she arrives at age, in her own right and disposal, any thing in the will contained to the contrary notwithstanding.

By the revised statutes, the absolute ownership of personal property cannot be suspended by any limitation or condition whatever, for a longer period than during the continuance and until the termination of two lives in being at the death of the testator. (1 R. S. 773, § 1.)

Here the absolute ownership is in the first instance suspended during the two lives of Mrs. Rapelje and Mrs. Cairns. The subsequent limitations therefore cannot be supported, unless upon the death of Mrs. Cairns they will inevitably devolve the personal property upon some person or persons whose right thereto will be absolute and unqualified. This cannot be said of any one of the subsequent gifts of the bulk of the estate. If on the death of Mrs. Cairns, Janette and Eliza Smith are living, they are to succeed for their lives and the life of the survivor. During the continuance of this limitation, the absolute ownership would still be suspended. And if W. P. Taylor had survived his mother, as the testator contemplated, this suspense of the ownership would have continued until his death also.

In short, as to the *corpus* of the estate, there could be no abso-

lute owner of the property until after the death of Mrs. Rapelje, Mrs. Cairns, W. P. Taylor, Janette Smith and Ellen Eliza Smith; when if the latter left issue, the estate would vest in such issue. If on the other hand, she should die without issue, there would still be the contingent remainders to be disposed of, which the testator limited to his remote relatives.

Thus in no event could the personal property vest absolutely, until after the termination of five lives in being at the death of the testator.

All the limitations of the mass of the personal property which were to take effect after the death of Mrs. Cairns, must therefore be declared void.

The bequest of fifty thousand dollars, stands upon different ground, because Ellen Smith was to take that absolutely, and it was not affected by the subsequent restriction attached to the principal estate upon her death without issue.

This bequest is given to her "*when she arrives at age.*" She was about nine years of age when the testator died.

It is very clear that this was not a vested legacy. It is by its terms, as well as by the settled rules of law, conditional upon her attaining the age of twenty-one years. And if she should die before "arriving at age," this legacy would lapse. There is no gift of the interest for her benefit in the meantime, either directly or indirectly. On the contrary, the testator expected that Mrs. Cairns would maintain her, until her life estate in the principal property would commence.

Not only that, but this legacy is given in the clause wherein he disposes of the principal estate remaining after the termination of the life estates of W. P. Taylor and Janette and Ellen Smith; and it admits of serious doubt, whether the legacy would vest in possession in Ellen on her arriving at the age of twenty-one years, if either Janette or W. P. Taylor were then living.

It therefore stands unqualified and alone, a gift *when* she shall arrive at age; and must be treated as a contingent bequest. (*Hanson* v. *Graham*, 6 Ves. 239; *Knight* v. *Knight*, 2 Sim. & St. 490; *Murray* v. *Tancred*, 10 Simons, 465; Lowndes on Legacies, 167.)

In the most favorable view that can be taken of this legacy of $50,000, the absolute ownership of it is suspended during the lives of Mrs. Rapelje and Mrs. Cairns, and also until it shall be ascertained whether Ellen Smith will attain the age of twenty-one years. So that it *may* be terminated, and the legacy vest absolutely in remainder, within the two lives in being at the testator's death. So it is evident that the suspense *may not* be terminated within these two lives. One of those lives has lapsed, and Ellen Smith is not yet of full age.

The inflexible rule derived from the revised statutes is, that the power of alienation in the case of real estate, and the absolute ownership of personal property, shall not by any contingency or possibility be suspended beyond the prescribed period. Therefore it is not legal to limit a legacy upon any contingency that might extend beyond two lives in being, unless by a provision that shall terminate the suspense upon the lapse of such lives. (*Hone's Executors* v. *Van Schaick*, 20 Wend. 564; *Irving* v. *De Kay*, 9 Paige, 521.)

The gift of the $50,000 cannot be maintained, and must share the fate of the ultimate limitations of the principal part of the estate.

There is no good reason for assailing the life interest of Mrs. Cairns in this property. It is not like the case where the testator in distributing his estate amongst his children, has made some devises which are good and some which are bad; and the vacating of the latter would not only frustrate his whole plan, but do rank injustice, if the good were permitted to stand. The bequest to Mrs. Cairns is wholly independent of all the others, and so far as the evidence before me shows, made upon an entirely distinct cause and motive. I have no reason to believe that the testator would have omitted this bequest, if the three subsequent legatees had died before he made his will. I have more reason to think, that in such an event, he would have greatly enlarged his gift to her.

The charge upon her bequest for the support of those three legatees, is in harmony with the postponement of any direct gift to them until after her death. Instead of the failure of their bequests furnishing a ground for overturning that to Mrs. Cairns,

it shows a greater necessity for maintaining the latter, so that the infant legatees may not be left wholly destitute, and the testator's intended kindness to them, utterly frustrated in all its aspects.

There is no trust to be set aside in this will, of which the provision for Mrs. Cairns forms a part, or with which it is inseparably or intimately connected. It stands as much detached from the void bequests, as if it were a legacy to a friend or a servant.

I have decided upon enough of the provisions of the will, to reach the point, that the complainant as one of the next of kin, is entitled to a share of the personal estate of George Rapelje, immediately upon the death of Mrs. Cairns.

There is some obscurity in regard to the bequest of $10,000 in the fourth article of the will, to the children of Mrs. Cairns. There are no such parties before me, and I will not express any opinion as to its validity.

The bequest to W. P. Taylor's children, in the same article has lapsed, if it were ever valid. That to the children of Janette Smith, is apparently postponed until after the life estates created by the fifth article, and its validity is questionable. The point was not raised at the hearing. If necessary to determine it in this suit, I will hear counsel upon the question.

The bequest to Mrs. Cairns, is not of specific chattels merely, but it is of the income, interest, issues and profits of the personal, as well as the real estate. In such cases the court directs the personal property to be sold and converted into money, and that an account be taken of the personal estate, and the whole invested in permanent securities. (*Covenhoven* v. *Shuler*, 2 Paige, 132, 133.)(*a*)

---

(*a*) In *Johnson* v. *Johnson*, 2 Collyer's Cas. in Chy. 441, March 6th, 1846, the testator gave the remainder of his property consisting of a bond debt, a leasehold estate and insurance and other stocks, to his wife, for her use and benefit during her life, and at her decease to be given to his children equally ; and in case of her marrying again, the will directed her to appoint trustees of his property for the benefit of his children, so that the same might not be wasted. The wife claimed the residuary property *in specie*, during her life. Sir Knight Bruce, V. C. decided that she was not entitled to retain it in specie, though he left it to the master to inquire

There must be a decree accordingly in this case, and it will direct the payment of the income to Mrs. Cairns during her life.

In respect of the real estate of the testator. There is no need of a decree declaring what Mrs. Cairns admits and what the law clearly establishes, that her life interest is subject to the payment of *some share* of whatever assessments may be made upon the property.

The decree cannot ascertain and declare in advance, what proportion of the future assessments she shall pay as tenant for life of the rents and income.

The controversy about her liability to pay any part of the assessments which were imposed in Mrs. Rapelje's lifetime, is no longer important, because those assessments have been paid by a sale of portions of the estate, under the late statute and the decree of this court, in *Cairns and wife* v. *Emmons and others*, founded upon it.

I do not perceive any point in regard to the real estate, which it is really necessary, or even important that I should decree in this suit; and it would therefore be improper for me to volunteer an opinion as to the validity of the various devises of the real estate subsequent to the termination of Mrs. Cairns' life interest.

The similarity of the statutory provisions which make the gifts of real and personal property void in certain cases, does not warrant a declaration in regard to the former in this suit.

Decree accordingly, as to the personal property of George Rapelje.

---

whether with a view to the interest of all parties, a conversion might not be dispensed with.

In *Pickup* v. *Atkinson*, 4 Hare, 624, March 28, 1846, after a specific gift of two leasehold houses to the testator's wife for life, with remainder over, he bequeathed the rents, profits, dividends and interest of all the residue of his property, to his wife for life, and after her decease, he gave the whole of such residue to his nephews and nieces. There was no freehold estate, and the residue consisted of leaseholds, government annuities and insurance shares. Sir James Wigram, V. C., in an able opinion, held that the widow was not entitled to the enjoyment of the residue *in specie*, but that the same ought to be converted. These two cases are also reported in 10 London Jurist Rep. 279, 303. See also *James* v. *Gammon*, before Sir Knight Bruce, V. C., January 30, 1846, 15 Law Journal Rep. N. S., Chy. 217 ; *Collins* v. *Collins*, 2 M. & K. 703.