Hoffman, J.
The whole income of the estate, real and personal, is disposed of, and directed to be appropriated until the youngest child of the testator attained the age of 21 years. There is no appropriation, except of a part next to be noticed, Avhich can extend beyond that event. Even the bequests of the residue of the income to his wife, after the particular appropriation, are restricted to that period, and provided she continued unmarried. The appropriation in the sixth clause, of the interest of $3,000 *475 for the life of the wife, of itself is perfectly legal, if the power of sale can be well executed.
The testator mentions Marcellas and Mary Adrianna, as his youngest children; and it is admitted, that Mary Adrianna was the youngest living at his death, and became of age on the 24th of October, 1860.
The distribution and vesting when the power is exercised, is absolute and entire to the different persons named in fee, except as to the shares of Susan, Mary Adrianna, and his granddaughter Sarah Eliza. Even if these dispositions were invalid, the power to sell would not fall with them.
Thus the single question is whether there is an illegal suspension of the power of alienation by force of those clauses which prevent a conveyance in fee until the youngest child attains the age of 21 years. The will speaks from the death of the testator. (1 R. S., § 41, p. 726 ; 5 Sandf. S. C. R., 369.) At that time there were four children under age. It was fully settled in Lang v. Ropke, (5 Sandf. S. C. R., 363,) that a devise to trustees to receive and apply the rents and profits during a minority, is not an absolute term of years corresponding with the probable duration of the minority; but is determined by the death of the minor before he attains his age. In that case the provision kept the estate inalienable “ until my youngest child living shall attain to the full age of 21 years.” The will was made in 1824, but the testator died in 1836, and only one child was then under age, and it was held that the limitation was valid, as it was confined to a single minority. The suspense could not exceed the life of the minor, and might be determined before his death. But if the trust is to continue during more than two minorities, the limitation would be void.
In McGowan v. McGowan, (2 Duer, 57,) the real estate and certain personal estate was given to the testator’s wife to support and educate the children, &c. “ And at my son John becoming of age, the whole of my estate to be divided equally among my children, named Bernard, *476 Alice, Martin, John, but should death take either from, the world, it shall be equally among the survivors.” It was held that the suspense would terminate on the death of John, the youngest child, and was therefore confined to a single life in being. Jennings v. Jennings (5 Sandf. S. C. R., 174 ; affirmed, 3 Seld., 547,) has an important bearing upon the present question. The scheme of the will was this: that the income of the testator’s estate real and personal, after payment of his debts, should be applied to the clothing and maintenance of his wife, and the clothing, maintenance and education of his children by her, and the surplus was to be invested by his wife as trustee for her children. The property was all to be kept together undivided until the eldest surviving child, by his present wife, should become 21 years old, and then to be appraised, and his or her equal share apportioned, and paid if required. (Opinion of Gridley, J., 3 Selden, 548.) The material clause was: “ As soon as my eldest surviving child by my present wife, becomes of the age of 21 years, the whole of the property to be fairly appraised and valued, and his or her equal share of the property apportioned, and if required, paid to him or her. And in like manner the same course to be pursued in respect to the rest of my surviving children by her.”
There were four children living at the death of the testator, all under age.
Two great objections to the will were dwelt upon in the Superior Court and Court of Appeals. First, if three of the eldest were to die under age, and the fourth arrived at age, the power of alienation would be suspended for three lives. It would continue during the minority of the youngest child. Second, as the children arrived, should they all do so successively, at the age of 21, the share of each was to be set apart. But the estate was not to be divided at the majority of the eldest child. The residue was still to be kept together for the maintenance and education of the rest, until the last of the children should arrive at the age of 21 years.
*477 But in the present case, immediately upon the coming of age of the youngest child, the whole real property is to be sold under the power, and the whole proceeds and all the personal estate are to be disposed of, and paid over, and in absolute ownership, immediately, with the exceptions before noticed.
Nor do I find anything sufficient to warrant the conclusion, that on the death of the youngest child, under age, the suspension would continue, if there was an elder one also under age, until his majority. There is, indeed, the clause in the fourth article, “ that they,” meaning Marcellas and Mary Adrianna, “ together with all my other infant children, shall have their necessary board and maintenance until they attain the age of 21 years, out of the rents and income of my said estate.”
If the other provisions of the will are free from invalidity on the ground of an unwarranted suspension, I should hold that this clause may be treated as creating a charge only; and in the event suggested, (of the death of the youngest child before majority,) the estate would be alienable, subject only to such an incumbrance. That has now terminated.
If we bring’ into the will what the cases I have cited authorize us to interpolate, it becomes in substance this: That suspension is directed, until his youngest child (Mary Adrianna, as if she were expressly named,) arrived at full age. Then the power to sell could be exercised. If she died before of full age, the whole scheme of the will, as to real estate, failed. The power, could not be exercised. It is given to be exercised on his youngest child attaining the age of twenty-one. It was dependent for its existence on that event happening. If it never happened, the power never came into being. If it did happen, the power then took effect. The creation of the power was not void, because there was no suspension but for the life of the one daughter, the designation of whom, as the youngest, was equivalent to a designation of her by name. And thus, if she died during minority, the power ceased. If *478 she lived to majority, the power came into force, and was legal, because it was dependent upon that event, and terminable if that event did not occur.
The case differs from Boynton v. Hoyt, (1 Denio, 53,) where the clause was, “ until the period when my youngest child would (if living) attain to the age of twenty years, and my daughter to the same period.” There was a trust to receive the rents, &c., in the interim. The limitation, says thb Chief Justice, is not bounded by the life of the youngest child or daughter, or by life in any form. There was an absolute or certain term fixed for the continuance of the trust.
If the limitation is to be treated as dependent on the life of the youngest child, as if she were named, the subsequent provisions taking effect after a decision, would be valid.
My conclusion is, that the power is legal, and a conveyance under it will vest a good title to Jane Lynch, the purchaser. Judgment must be entered accordingly.
Robertson, J.
The difference submitted to this Court for its decision, turns upon the validity of the powers of sale given to the executors in the will in question, and that as manifestly depends upon the purposes for which such power was given; of course if they are illegal the power itself must fail. (Wood v. Wood, 5 Paige, 597 ; Hawley v. James, 16 Wend., 71 ; Howe’s Exrs. v. Van Schaick, 20 Wend., 564.) If the power be a naked power to sell for the purpose of distribution, in other words, an out and out conversion without reference to any purpose, it would clearly be legal, but I apprehend the will in question will not justify such an interpretation. The estate given to the widow of the testator by the third clause of the will, until the majority of his youngest child, is, on that event, changed into a mere right to the income of a sum of money, part of the proceeds of the sale of such land, to be received in lieu of dower. Then the seventh clause gives “All the rest, Sac., of his estate ” to his children and grandchildren in certain proportions, and provides that *479 the sum or. amount so given" to a daughter should be “put out at interest on bond and mortgage." The money to be invested for the widow was evidently to be part of the proceeds of the sale; the rest was to be the residue of such proceeds, after such investment. A sum to be put out at interest explains itself; so that the intent was that the testator’s descendants named, were to take their shares in the shape of money produced by the exercise of the power of sale; and this being its main purpose it must be defeated if that purpose prove illegal.
There can hardly be a question, that the estates in land given by the seventh clause of the will pass to the testator’s descendants therein named, by virtue thereof, as real estate, in case the power of sale is defeated or never exercised or is released; that they do not depend upon the exercise of such power; and that the land does not descend to the testator’s right heirs subject to the execution of the power. It is a direct devise of all the testator’s real as well as personal estate to the devisees named : It is not conditional upon the exercise of the power of sale or the arrival of age of the testator’s youngest child: The eighth clause of the will puts it beyond question; because it directs that the share of every child of the testator who should die before his youngest should attain the age of twenty-one (including that child herself) or before a sale or division of his estate (as is in the seventh clause provided,) should go to and be divided among all the survivors in like manner as is thereinbefore mentioned: The power of sale was therefore given only to facilitate the raising of the charge for the benefit of the widow if living, on tire coming of age of the youngest child, and the division of the estate in the proportions mentioned in the seventh clause. If, therefore, the estates created by such clause were not illegal, the power was valid so far as they affect it.
The estates, given to different devisees by the seventh clause, are distinct gifts. First. Of one-ninth of the whole estate to each of testator’s sons. Secondly. Of three separate ninths thereof to his executors, in trust as to each of *480 two thereof, during the respective lives of each of his daughters, and of the third during the life of a granddaughter, with the remainder in fee to the children of each on their respective deaths; and, Thirdly. Of one of four thirty-sixth parts to each of the four children of a deceased daughter of the testator. Such interests are entirely separate and distinct, far more plainly so than in the will under consideration in the case of Mason v. Jones’ Ex’rs, (2 Barb., 229 ; S. C., 3 Comst., 375,) where it was held that no prohibition against the suspension of alienation was created by trusts of different portions of an estate. The trust estates, therefore, created in such seventh clause only tied up each separate interest during the life of the party for whom it was so placed in trust.
The eighth clause, however, of the will in question divests the interest which each devisee, who was the testator’s child, was to take otherwise under the seventh clause, in case he or she died, without leaving lawful issue, before the testator’s youngest child should attain the age of twenty-one. It is not very material, in this case, whether the youngest child in such contingency is to be construed the youngest who should attain the age of twenty-one, or the actual youngest living at the date of the will, making the term, in the latter alternative, a fixed date in October, 1860: The remainder over, in case of a child so dying, on either interpretation, would be a future estate; vested as to the persons, but contingent as to the event, as defined in the Revised Statutes, (1 R. S., p. 723, §§ 10, 13,) and which they render alienable. (Id., p. 725, § 35.) As to the interests of the two daughters in such accretion, even if there were a suspension of alienation, it would only be as to each share during the life of the daughter for whom it was bequeathed in trust; And although there might be no persons in existence, by whom, the contingent remainder, created by the eighth clause, could be released or conveyed, until after the death of both daughters, it would only be a suspension of alienation for their *481 lives, inasmuch as the remainder over only applies to the children’s, share.
The estates, therefore, for the creation of which the power of sale is to be exercised, are legal, and the power is not, therefore, void, as its sole purpose seems to be the facilitation of a division among the devisees.
I do not know whether any point was intended to be made in this case, as to the time when the power of sale was directed to be exercised, by insisting that it Avas not to be before it should be determined who was the testator’s youngest child who should attain its majority, thus possibly postponing the alienation until after the expiration of several lives. I think it can hardly be doubted, that the youngest child spoken of, in the contingency repeated so often in the will as to her attaining majority, was the youngest living child, (Mary Adrianna:) Because, otherwise, the “ home” spoken of in the third section could not be continued legally, after that child came of age, who should ultimately prove to be the youngest who should reach its majority, by the deaths of others, who might be younger in their minority; any advances previously made for the maintenance of such younger children, Avould become unauthorized; and the testator’s widow aud son would be obliged, after the majority of such youngest child, to repay any rents and income received by them preAÜously, under the fourth clause, after such majority in such case: If so, of course the exercise of such power was only postponed until October, 1860. But even if it were not so, the validity of the poAver would not be affected by the limitation of the time of its exercise, especially not upon the ground that it suspended the alienation of the estate: The suspension of alienation by a power of sale, seems to be a paradox, since it is difficult to conceive how alienation can be suspended by a power to alienate permitted by law: A power is defined to be an authority to do an act in relation to lands. (1 R. S., p. 732, § 74 :) The act when done, if recognized by law, might obstruct alienation by others, but not the mere time of doing it. In the statute, which *482 declares the creation, construction and execution of powers to be governed by its provisions, (1 R. S., 732,) no restriction is imposed upon the time or contingency of exercising them : although it confines the periods for suspension of alienation by instruments executed under powers, to the same limits as those provided for future estates. (1 R. S., 727, § 128.) A power is not an estate or interest in lands; unexercised, it is an encumbrance 5 and when exercised, the act performed by virtue of it is considered and construed as done by the donor of the power: If it were otherwise, a power to sell to be exercised at a fixed future time, even a power in a mortgage, would be invalid, because lives were not taken as the periods of limitation for its exercise.
If, however,- the power of sale be taken to be one for absolute out and out conversion, as in the ease of Kane v. Gott, (24 Wend., 641,) and the estates, given in the seventh and eighth clauses, are to be considered as grafted on the proceeds instead of the land, the rales applicable to personal estate only are to be applied, and in such ease the same principles would prevail.
Judgment must therefore be rendered in favor of the executors, with the costs allowed by statute against the purchaser.