[No. 15592.  In Bank.—September 3, 1895.]

## IN THE MATTER OF THE ESTATE OF WILLIAM WALKERLY, DECEASED.

WILLS—TRUSTS — SUSPENSION OF POWER OF ALIENATION.—A devise of real estate to trustees upon trusts to manage the property and apply the proceeds for the use of persons designated, and at the expiration of twenty-five years, or, if the widow should at that time be alive, then upon her death, to sell the property and distribute the proceeds among the then living nephews and nieces and the descendants and heirs of those who might be dead, is fatally defective in that it provides for an absolute period of years for the determination of the trust, during which period the power of alienation is suspended.

ID.—ESTATE OF TRUSTEES—INALIENABILITY DURING PERIOD OF TRUST.— Every express trust, valid in its creation, vests the whole estate in the trustees, and where it provides for applying the income for twenty-five years, and for a sale of the property and disposition of the proceeds, it vests the whole legal and equitable estate which the testator enjoyed, and the beneficiaries take no estate as such, their interest being merely the right to the enforcement of the trust; and during the period limited for the trust any attempt by the trustees to convey would contravene the trust and be a void act, nor can the trust be terminated or destroyed during the period fixed for its existence even by the consent and joint acts of all the trustees and beneficiaries; and such trust would, if enforced, necessarily make the absolute fee inalienable during the period of the trust.

ID.—WHOLE ESTATE DEFINED.—The whole estate which, under section 863 of the Civil Code, is vested in the trustees, is the whole of such an estate as is necessary to carry out the purposes of the trust.

ID.—NATURE OF PERPETUITY—POSSIBLE SUSPENSION BEYOND LIVES IN BEING.—A perpetuity is any limitation or condition which may take away or suspend the absolute power of alienation for a period beyond the continuance of lives in being, and it is not necessary that it will, or must, suspend alienation for such a period; and a trust which is inalienable for a period of years which may possibly extend beyond the continuance of the lives of persons in being at the date of its creation, is void as creating a perpetuity.

ID.—ELEMENTS OF TRUST—VALIDITY.—To the constitution of every valid express trust it is essential that there should be a trustee, an estate conveyed to him, a beneficiary, a legal purpose and a legal term; and while equity will in some cases make good the absence of a trustee, if the estate conveyed or the beneficiary be lacking, or there be no legal purpose or legal term, the trust must fall.

ID.—PERIOD OF SUSPENSION OF ALIENATION.—The law has seen fit to insist that the measure of the period of suspension shall be lives in being, and it will not countenance the suspension for any fixed period of years, not depending upon the duration of life, since during the time of such limitation, however short, the persons capable of conveying the interest might die.

ID.—EQUITABLE CONVERSION— FUTURE SALE OF REALTY.—The doctrine of

equitable conversion cannot be invoked to aid a trust in real estate for
a term of years upon the theory that the real estate is to be treated
as sold and converted into personal property, when the direction is
for a future sale at the expiration of the term of years; but, up to the
time fixed for the sale, the land must be governed by the law of real
estate.

ID.—EFFECT OF VOID TRUST—INTESTACY OF TESTATOR—INTENTION IMMATE-
RIAL.—Where a void trust is created in real estate by the residuary
clause of a will the effect of its invalidity is the intestacy of the testator
as to the real estate so conveyed, and the property will descend to the
heirs of the testator; and it is immaterial that such was not the tes-
tator's intent, since he must make a valid disposition of his property
before the right to succession of heirs can be cut off.

ID.—DEVISE TO WIDOW—TIME OF PAYMENT.—Where the testator bequeathed
a present legacy to his widow, with the time of payment deferred until
the sale of real estate provided for in an invalid trust, the legacy is a
present gift vesting immediately, and the condition deferring the time
of payment being repugnant to it and impossible upon its face, is void,
and the legacy vests absolutely in the widow.

ID.—HOMESTEAD SET APART TO WIDOW AND CHILD—DEVISE IN TRUST—
TITLE OF HEIRS—CONSTRUCTION OF CODE—LIMITATION OF TESTAMEN-
TARY POWER.—Where real estate devised by a testator in trust as his
separate property, is set apart to his widow and minor child during her
widowhood as a homestead, the title to such homestead vests in the
heirs of the deceased under section 1468 of the Code of Civil Procedure,
subject to the order setting apart the homestead, and the word "heirs"
used in that section of the code cannot be construed so as to include
devisees named in the will of the testator; but must be construed as a
limitation upon the testamentary power of the testator as to separate
property upon which the homestead character is impressed by order of
the court, and removes from the disposition of the will any property
selected and set apart to the widow and children as a homestead, regard-
less of any excess in the estimated value of the homestead.

ID.—FAILURE OF TRUST—LACK OF SUBJECT MATTER—SUSPENSION OF ALIEN-
ATION—POWER OF SALE.—A trust in real estate set apart to the widow
for a homestead fails for lack of subject matter, and also owing to the
suspension of the power of alienation, where the trust is to continue
for the period of twenty-five years; and the mere power of sale of such
property before the expiration of twenty-five years does not save the
provisions of the trust, where the trust requires the proceeds of the
sale to be held during the period of twenty-five years in violation of
the law:

ID.—VALIDITY OF TRUST IN PERSONAL PROPERTY—SUSPENSION OF ALIENA-
TION—CONSTRUCTION OF CODE.—Under sections 715 and 771 of the Civil
Code, the limitation upon the suspension of the power of alienation is
applicable to all trusts for a fixed period of years, whether of real or
personal property, and a trust in personal property suspending the power
of alienation for the period of twenty-five years is void.

ID. — COMMON-LAW RULE AS TO PERPETUITIES. — The common-law rule
against perpetuities applies to executory devises, springing and shifting
uses, and trusts, whether of realty or personalty, and every gift of real
or personal estate by will or otherwise must be brought within the terms
of the rule.

ID.—ELECTION OF WIDOW TO TAKE UNDER WILL—VALIDITY OF TRUSTS—
ESTOPPEL.—While the election of the widow to take under the will
estops her from denying the validity of the instrument as a will, it
cannot estop her from insisting upon a proper interpretation of the
instrument nor from questioning the validity of trusts attempted to
be created thereby.

ID.—DUTY OF COURT UPON DISTRIBUTION—VALIDITY OF TRUSTS—CONSENT—
POLICY OF LAW.—It is the duty of the court upon distribution to give
effect to the legal devises and bequests of the testator, and it cannot,
even with the consent of the parties, declare valid trusts which are op-
posed to the express mandate and policy of the law.

ID.—INTENTION OF TESTATOR—PAROL EVIDENCE OF CIRCUMSTANCES.—It is
the duty of the court in all cases to ascertain the intent of the testator
from the language of the will, and parol evidence of extrinsic circum-
stances is not admissible where the terms of the will are plain and un-
ambiguous; and where provisions of the will are declared invalid, the
court cannot modify or vary the language of the testator so as to create
a new and valid will for him, nor can the introduction of evidence of
extrinsic circumstances without objection sustain or render valid an in-
valid disposition of the testator's property.

ID.—POWER OF COURT TO VARY TRUSTS.—Courts have no power to decree
trusts different in their terms from invalid trusts created by the will, so
as to render the same valid, nor can they wrest the plain and unambig-
uous language of the will from its natural import, in order to save it
from condemnation.

APPEAL from a decree of distribution of the Superior
Court of Alameda County.   W. E. GREENE, Judge.

The facts are stated in the opinion of the court.

*Rodgers & Paterson*, for Appellant.

The intent of the testator, however clear, must fail of
effect, if it cannot be carried into effect without viola-
tion of the rules of law.   (1 Powell on Devises, 388, 389;
*Brattle Square Church* v. *Grant*, 3 Gray, 158; 63 Am.
Dec. 725; *Coster* v. *Lorillard*, 14 Wend. 349.)   The trusts
and future estates under the will are void, as suspend-
ing the absolute power of alienation for a period of
years.   (Civ. Code, secs. 679, 715, 716, 749, 889; Chap-
lin on Suspension of Alienation, secs. 64, 123; *Hawley*
v. *James*, 16 Wend. 123, 134, 172; *Coster* v. *Lorillard*, 14
Wend. 313; *Hones* v. *Van Schaick*, 20 Wend. 566; *De
Wolf* v. *Lawson*, 61 Wis. 470; 50 Am. Rep. 148; *Barnum*
v. *Barnum*, 26 Md. 119; 90 Am. Dec. 95, 104; *Haynes*

v. *Sherman,* 117 N. Y. 433, 439; *Mandlebaum* v. *Mc-Donell,* 29 Mich. 78; 18 Am. Rep. 61; *Penfield* v. *Tower,* 1 N. D. 216; *Garvey* v. *McDevitt,* 72 N. Y. 562; *Henderson* v. *Henderson,* 46 Hun, 509; *Rose* v. *Rose,* 4 Abb. Ct. App. Dec. 108; *Underwood* v. *Curtis,* 127 N. Y. 541; *Cruikshank* v. *Home etc.,* 113 N. Y. 351; *Rice* v. *Barrett,* 102 N. Y. 164; *Festing* v. *Allen,* 12 Mees. & W. 301; *Boynton* v. *Hoyt,* 1 Denio, 58, 59; *Field* v. *Field,* 4 Sand. Ch. 533, 545, 546, 550; *Leake* v. *Robinson,* 2 Mer. 388; *Boughton* v. *Boughton,* I H. L. Cas. 406; *Scarisbrick* v. *Skelmersdale,* 17 Sim. 199.) The estate is void if there is any possibility under any circumstances of suspension beyond lives in being. (*Underwood* v. *Curtis, supra; Haynes* v. *Sherman, supra; Hawley* v. *James, supra; Blagrove* v. *Hancock,* 16 Sim. 371; *Curtis* v. *Lukin,* 5 Beav. 155; *Brattle Square Church* v. *Grant, supra; Yates* v. *Yates,* 9 Barb. 347; *Schettler* v. *Smith,* 41 N. Y. 328; *Henderson* v. *Henderson,* 46 Hun, 509; Perry on Trusts, 381; Civ. Code, sec. 716.) The statute applies to ownership of every kind, and to both real and personal property. (*Coster* v. *Lorillard, supra; Field* v. *Field, supra; Thompson* v. *Clendening,* 1 Sand. Ch. 387; *Yates* v. *Yates, supra;* Civ. Code, div. 2, pt. I, tit. II, c. 2, secs. 678–749; *Goldtree* v. *Thompson,* 79 Cal. 622; *Estate of Hinckley,* 58 Cal. 481; *Hawley* v. *James, supra; Penfield* v. *Tower, supra; Haynes* v. *Sherman, supra; Cruikshank* v. *Home etc., supra; Ford* v. *Ford,* 70 Wis. 19; 5 Am. St. Rep. 117; *Palms* v. *Palms,* 68 Mich. 355; *Cuthbert* v. *Chauvet,* 136 N. Y. 326; *Douglas* v. *Cruger,* 80 N. Y. 15.) The essential parts of the trust scheme being void, the trust will be disregarded, and the property belongs to the heirs. (*Field* v. *Field, supra; Rice* v. *Barrett, supra; Tilden* v. *Green,* 130 N. Y. 50; 27 Am. St. Rep. 487; Civ. Code, secs. 866, 871, 2279; *Coster* v. *Lorillard, supra; Hawley* v. *James, supra; Haynes* v. *Sherman, supra; Beekman* v. *Bonsor,* 23 N. Y. 312; 80 Am. Dec. 269; Perry on Trusts, 160.) The gift to the widow and child is a vested interest. (*Williams* v. *Williams,* 73 Cal. 100; *Fuller* v. *Winthrop,* 3 Allen, 60; *Hanson* v. *Graham,* 6

Ves. 239.) The condition of delayed payment being dependent on the void trust, the condition only is void, and the legacy takes immediate effect. (Civ. Code, secs. 709, 711; Chaplin on Suspension of Alienation, 394; *Hones* v. *Van Schaick, supra; Oxley* v. *Lane,* 35 N. Y. 350; *Brattle Square Church* v. *Grant, supra.*) The will must be construed according to the plain meaning of the words. (*Dacre* v. *Dacre,* 1 Bos. & P. 258; *Graham* v. *Graham,* 23 W. Va. 41, 42; 48 Am. Rep. 364.) The language of the will being clear, no extraneous evidence of the testator's intention can be considered. (*Hutchings* v. *Castle,* 48 Cal. 156.) There can be no estoppel of the widow to deny the validity of the trust, the law against restraints upon alienation having been established for reasons of public policy. (Const., art. XX, sec. 9; Civ. Code, secs. 711, 715, 716; Gray's Restraint on Alienation, secs. 21, 168, 258; *Mandlebaum* v. *McDonell, supra; Estate of Hinckley, supra; Goldtree* v. *Thompson, supra; Anderson* v. *Cary,* 36 Ohio St. 506; 38 Am. Rep. 602; *Overbagh* v. *Patrie,* 8 Barb. 28; 6 N. Y. 510; *Dick* v. *Pitchford,* 1 Dev. & B. Eq. 480.) A law established for a public reason cannot be contravened by a private agreement. (Greenhood's Public Policy, 8; Civ. Code, sec. 513; *Coppell* v. *Hall,* 7 Wall. 542, 558, 559.)

*H. C. Firebaugh,* and *F. E. Whitney,* for Executors and Trustees, and Certain Beneficiaries, Respondents.

The court was justified in ordering that the property should be sold by the trustees as soon as practicable, to effect the intention of the testator. (Jarman on Wills, 326, et seq; *Williams* v. *Williams,* 73 Cal. 99; *In re Whitcomb,* 86 Cal. 265; *Colton* v. *Colton,* 127 U. S. 309; *Findlay* v. *King,* 3 Pet. 346; Civ. Code, secs. 1317–50, 1376, 3534, 3540–42.) The court was not necessarily confined to the words of the will, extraneous circumstances bearing upon the questions of intent having been admitted in evidence without objection. (Civ. Code, 1318, 1340.) The widow is estopped from attempting to induce the

court to hold invalid the trusts under which she was receiving money. (Code Civ. Proc., secs. 1307, 1327–33, 1666, 1908–62; *Howell* v. *Budd*, 91 Cal. 342; *Estate of Cunningham*, 54 Cal. 556; *Estate of Maxwell*, 74 Cal. 384; *Morrison* v. *Bowman*, 29 Cal. 337; *Noe* v. *Splivalo*, 54 Cal. 207; 1 Jarman on Wills, marg. p. 415, and notes 1, 2, and authorities there cited; Schouler on Executors, sec. 72; *Donner* v. *Palmer*, 51 Cal. 629; *People* v. *Robinson*, 46 Cal. 96; Civ. Code, sec. 3515; *Harrison* v. *Spring Valley etc. Co.*, 65 Cal. 376; *Hill* v. *Den*, 54 Cal. 6; *Adams* v. *Lansing*, 17 Cal. 629; *Dunne* v. *Dunne*, 66 Cal. 158; *Estate of McDevitt*, 95 Cal. 17; *Moore* v. *Earl*, 91 Cal. 632; *Estate of Moore*, 95 Cal. 34.) The court was justified in treating the twenty-five years clause as a condition restraining alienation, which should be disregarded, leaving the trust otherwise in effect. (*Lachlan* v. *Reynolds*, 9 Hare, 796, and cases cited; *Norris* v. *Hensley*, 27 Cal. 439; Jarman on Wills, marg. pp. 262–64, 853, 854; 6 Lawson's Rights, Remedies, and Practice, sec. 3270; Lewis on Perpetuities, 512–14; *Adams* v. *Berger*, 18 N. Y. Supp. 33; Civ. Code, sec. 709–11, and commissioner's notes thereto; *Rickett* v. *Johnson*, 8 Cal. 34; *Crandall* v. *Woods*, 8 Cal. 143; *Connolly* v. *Goodwin*, 5 Cal. 221; *Babcock* v. *Middleton*, 20 Cal. 653; *Estate of Hinckley*, 58 Cal. 474.) The will contained a direction to sell the real property, and it must be deemed personal property from the time of the death of the testator. (*Estep* v. *Armstrong*, 91 Cal. 662; Jarman on Wills, marg. pp. 547–61; *Lorillard* v. *Coster*, 5 Paige, 172; *Dodge* v. *Williams*, 46 Wis. 97; *Craig* v. *Leslie*, 3 Wheat. 577; *White* v. *Howard*, 46 N. Y. 162; *Kane* v. *Gott*, 24 Wend. 641; 35 Am. Dec. 641; *Greenland* v. *Waddell*, 116 N. Y. 234; 15 Am. St. Rep. 400; *Ford* v. *Ford*, 70 Wis. 19; 5 Am. St. Rep. 117, and note; *Haward* v. *Peavey*, 128 Ill. 430; 15 Am. St. Rep. 120; *Crane* v. *Bolles*, 49 N. J. Eq. 373; *Huber* v. *Donoghue*, 49 N. J. Eq. 125; *Bowditch* v. *Ayrault*, 138 N. Y. 662; 6 Lawson's Rights, Remedies, and Practice, sec. 2688; 3 Pomeroy's Equity Jurisprudence, sec. 1162; *Estate of Pearsons*, 98 Cal. 603.) The rule of

perpetuities does not apply to interests in personal property. (Jarman on Wills, marg. pp. 271, 547–98, 856, and notes; *Routledge* v. *Dorrill*, 2 Ves. Jr. 365; 6 Lawson's Rights, Remedies, and Practice, sec. 3271; *Dodge* v. *Williams, supra.*)   Testamentary dispositions are presumed to vest at the testator's death, and any doubt should be resolved in favor of vesting.   (Civ. Code, sec. 1341; *Coggins' Appeal*, 124 Pa. St. 10; 10 Am. St. Rep. 565; 4 Kent's Commentaries, marg. pp. 202–07, 248, and note *b*; *Goldtree* v. *Thompson*, 79 Cal. 613; 6 Lawson's Rights, Remedies, and Practice, secs. 3268–71, and notes; *Kane* v. *Gott, supra; McClure's Appeal*, 72 Pa. St. 414; *Robert* v. *Corning*, 89 N. Y. 225; *Haxtun* v. *Corse*, 2 Barb. Ch. 506; *Van Vechten* v. *Van Veghten*, 8 Paige, 106; *Darling* v. *Rogers*, 22 Wend. 483; *Estate of Rogers*, 94 Cal. 526, and authorities cited; *Goebel* v. *Wolf*, 113 N. Y. 405; 10 Am. St. Rep. 470, and appended notes; *Reed's Appeal*, 118 Pa. St. 215; 4 Am. St. Rep. 588; *Greenland* v. *Waddell, supra; Mifflin's Appeal*, 121 Pa. St. 205; 6 Am. St. Rep. 781; *Kimball* v. *Crocker*, 53 Me. 263; *Scott* v. *West*, 63 Wis. 529; *Tucker* v. *Bishop*, 16 N. Y. 402; *McArthur* v. *Scott*, 113 U. S. 340; *Estate of Laguerrenne*, 15 Phila. 553; *Womrath* v. *McCormick*, 51 Pa. St. 504; *Mull* v. *Mull*, 81 Pa. St. 393; *Little's Appeal*, 117 Pa. St. 14; *Smith* v. *Edwards*, 88 N. Y. 92–105; *Mercantile Bank* v. *Ballard*, 83 Ky. 481; 4 Am. St. Rep. 160; Jarman on Wills, marg. pp. 263–71, 547, 549, 555, 594, 595, 796–809, 852, 853, and notes; *Steib* v. *Whitehead*, 111 Ill. 247–51; note to *Smith* v. *Towers*, 9 Am. St. Rep. 404; *Lorillard* v. *Coster, supra.*)   Vested remainders are actual estates, and may be conveyed.   (4 Kent's Commentaries, marg. pp. 202–07; *Taylor* v. *Mason*, 9 Wheat. 325; *Crane* v. *Bolles, supra; Greene* v. *Greene*, 125 N. Y. 506; 21 Am. St. Rep. 743; *Greer* v. *Chester*, 17 N. Y. Supp. 238; 62 Hun, 329; *Goldtree* v. *Thompson, supra; Moore* v. *Lyons*, 25 Wend. 119; *Doe* v. *Provoost*, 4 Johns. 61; 4 Am. Dec. 249; *Annable* v. *Patch*, 3 Pick. 360; *Howard* v. *Peavey, supra; Blanchard* v. *Blanchard*, 1 Allen, 223; Jarman on Wills, marg. pp. 219–21, 756 et seq., 762 et seq., 795–809, and notes; *Wood* v. *Robert-*

*son,* 113 Ind. 323; *Loring* v. *Blake,* 98 Mass. 253; *Lovering* v. *Worthington,* 106 Mass. 86; *Simonds* v. *Simonds,* 112 Mass. 157; *Minot* v. *Taylor,* 129 Mass. 160; *Goldsborough* v. *Martin,* 41 Md. 488; *Heald* v. *Heald,* 56 Md. 300; *Wood* v. *Griffin,* 46 N. H. 230; *Donohue* v. *McNichol,* 61 Pa. St. 73; *Barnum* v. *Barnum,* 26 Md. 119; 90 Am. Dec. 102, 103; *Otterback* v. *Bohrer,* 87 Va. 548; 6 Lawson's Rights, Remedies, and Practice, sec. 2741, and notes; Lewis on Perpetuities, 512–14, 599; Gray on Perpetuities, 99, 279; *Hall* v. *Williams,* 120 Mass. 344; *Earp's Appeal,* 75 Pa. St. 119; *Owens* v. *Missionary Soc.,* 14 N. Y. 401; *People* v. *North Riv. etc. Co.,* 121 N. Y. 582, 621; 18 Am. St. Rep. 843; *Murray* v. *Addenbrook,* 4 Russ. 407; Perry on Trusts, sec. 381; *Curtis* v. *Lukin,* 5 Beav. 147; *Seaver* v. *Fitzgerald,* 141 Mass. 401; *Yard's Appeal,* 64 Pa. St. 95; *Claflin* v. *Claflin,* 149 Mass. 19; 14 Am. St. Rep. 393; *Sears* v. *Choate,* 146 Mass. 395; 4 Am. St. Rep. 320.) The right of beneficiaries to personal property is absolute, so far as residuary legatees are concerned. (*Schermerhorn* v. *Cotting,* 131 N. Y. 48; Civ. Code, sec. 694, code commissioner's note; 6 Lawson's Rights, Remedies, and Practice, sec. 3271, and cases, and sec. 3275, and cases; *In re Spencer,* 96 Cal. 452; Jarman on Wills, marg. pp. 316, note 1, 602–09, 796–809, 852–54; *Richardson* v. *Hunt,* 59 Hun, 627; *Leake* v. *Watson,* 60 Conn. 498; *Dulany* v. *Middleton,* 72 Md. 67; *Hillyer* v. *Vandewater,* 121 N. Y. 681; *Rhodes' Estate,* 147 Pa. St. 227.) Where the common law found a condition restraining alienation too long, it avoided the condition, leaving the bequest in effect. (*Lachman* v. *Reynolds, supra;* 2 Washburn on Real Property, marg. pp. 341, 360–70, 4; Kent's Commentaries, marg. pp. 131–33, and notes, also 271, 272, and notes; *Haxtun* v. *Corse, supra; Van Vechten* v. *Van Veghten, supra; Bolton* v. *Ohio Nat. Bank,* 50 Ohio St. 290; *Parks* v. *Parks,* 9 Paige, 107; *Claflin* v. *Claflin, supra;* Perry on Trusts, sec. 383–92, and notes; *Lorillard* v. *Coster, supra; Murray* v. *Green,* 64 Cal. 363; *Williams* v. *Williams, supra; Norris* v. *Hensley, supra;* Civ. Code, secs. 707, 709, 711, 764, 778, 1317–51, 1376, 3541; Jar-

man on Wills, marg. pp. 842, 843, 852–64, and notes.)
The homestead, being the separate property of the deceased, was properly vested in the trustees. (Civ. Code, secs. 749, 763, 863, 1342; *Ward* v. *Waterman*, 85 Cal. 488; *Welch* v. *Huse*, 49 Cal. 506, 507; *Goldtree* v. *Thompson*, *supra; Wells* v. *Heath*, 10 Gray, 25; 1 Jarman on Wills, marg. pp. 140–45 et seq; *Grimball* v. *Patton*, 70 Ala. 626; *Buchanan* v. *Lloyd*, 64 Md. 306; *Crozier* v. *Bray*, 120 N. Y. 366; *Austin* v. *Oakes*, 117 N. Y. 577; *Hard* v. *Ashley*, 117 N. Y. 606; *Newcomb* v. *Webster*, 113 N. Y. 191; *Pierpont* v. *Patrick*, 53 N. Y. 595; *Brant* v. *Wilson*, 8 Cow. 56; *Bradley* v. *Gibbs*, 2 Jones Eq. 13; *Reichard's Appeal*, 116 Pa. St. 232.) The codes must be read together to give effect to each provision, if possible. (Pol. Code, sec. 4480; *Gonzales* v. *Wasson*, 51 Cal. 297; *People* v. *Applegarth*, 64 Cal. 229; *Ham* v. *Santa Rosa Bank*, 62 Cal. 136, 137; 45 Am. Rep. 654; *Bruner* v. *Superior Court*, 92 Cal. 246, 247.) The heirs to whom the homestead is to go means the persons in whom the title to the property is vested, and includes the trustees to whom it is devised. (Code Civ. Proc., sec. 1468; Civ. Code, secs. 749, 863, 1270, 1358.)

*B. B. Newman*, and *Fox, Kellogg & Gray*, for John Walkerly and others, Respondents.

The probate court has no jurisdiction over the devised estate or to make the decree appealed from. (*Smith* v. *Westerfield*, 88 Cal. 378; *Neary* v. *Godfrey*, 102 Cal. 338.) The duties of the executors as trustees remained paramount to their duties as executors, there being no necessity for them to exercise any control over it as executors, or to pay debts, and their duties as trustees dated from the death of the testator. (*Johnson* v. *Lawrence*, 95 N. Y. 154; *In re McCredie's Estate*, 28 N. Y. Supp. 305; *Lyton* v. *Davidson*, 95 N. Y. 263; *Phœnix* v. *Livingston*, 101 N. Y. 451; *In re McAlpine*, 126 N. Y. 285; *In re Crawford*, 113 N. Y. 560; *Hurlburt* v. *Durant*, 88 N. Y. 121; *Valentine* v. *Valentine*, 2 Barb. Ch. 430. *Drake* v. *Price*, 5 N. Y. 430; *Hall* v. *Hall*, 78 N. Y. 539;

*Lansing* v. *Lansing*, 45 Barb. 182; 31 How. Pr. 55; *Mann* v. *Lawrence*, 3 Bradf. 424; *Matter of Carman*, 3 Redf. 47; *Ward* v. *Ford*, 4 Redf. 45.) The power and authority given to the trustees as executors is exclusively in them, and not in the probate court for any purpose. (*Matter of Gantert*, 136 N. Y. 106, 113; *Estate of Pearsons*, 98 Cal. 603; *Larco* v. *Casaneuava*, 30 Cal. 560–68.) The probate court has no jurisdiction to construe the will or codicil, or to determine the question of title. (*Estate of Haas*, 97 Cal. 232; *Eckford* v. *Eckford* (Iowa, Oct. 24, 1892), 53 N. W. Rep. 345.) It is the duty of the executors as trustees to uphold the will and codicil, instead of destroying them. (*Estate of Marrey*, 65 Cal. 287; *Roach* v. *Coffey*, 73 Cal. 281; *Estate of Jessup*, 80 Cal. 625; *Estate of Parsons*, 65 Cal. 240; *Goldtree* v. *Thompson*, 83 Cal. 420; *Bates* v. *Ryberg*, 40 Cal. 463; *Estate of White*, 49 Cal. 433; *In re Whetton*, 98 Cal. 203, 204.) The intention of the testator is to be determined from the will itself, and no extrinsic evidence is admissible. (Civ. Code, sec. 1340; *Estate of Garraud*, 35 Cal. 336; *Estate of Whitcomb*, 86 Cal. 265–72; *Estate of Rogers*, 94 Cal. 526, 531; *Smith* v. *Bell*, 6 Pet. 74; *Eckford* v. *Eckford*, *supra*; *Bowditch* v. *Ayrault*, 138 N. Y. 222, 229–31; *Cuthbert* v. *Chauvet*, 136 N. Y. 326.) The will is its own expositor, and a law unto the court. (*Marshall* v. *Hadley*, 50 N. J. Eq. 547–53; *Davison* v. *Rake*, 45 N. J. Eq. 767–71; *Bruck* v. *Tucker*, 42 Cal. 346; *Bonnell* v. *Bonnell*, 47 N. J. Eq. 540–46; *Larco* v. *Casaneuava*, *supra*; *In re McComb*, 117 N. Y. 378–83.) The executors having been empowered to sell property, to pay debts and funeral expenses, " excepting the residence and the Walkerly building," the probate court had no jurisdiction of the excepted property, and its order to sell the same as soon as practicable is in excess of the jurisdiction of the probate court and void. (*Duke* v. *Ellis*, 16 East, 352; *Allen* v. *Scott*, 21 Pick 25; 32 Am. Dec. 238; *Darling* v. *Crowell*, 6 N. H. 421, 423, 424; *Goodrich* v. *Eastern R. R. Co.*, 37 N. H. 149–67; *Cocheco Mfg. Co.* v. *Whittier*, 10 N. H. 305, 311, 315; *Case* v. *Haight*, 3 Wend. 632–35; 7 Am. & Eng. Ency. of Law,

113; *Bryan* v. *Bradley*, 16 Conn. 474–81; *Bowman* v. *Wathen*, 2 McLean, 376–91; *Greenleaf* v. *Birth*, 6 Pet. 302–10; *State* v. *Wilson*, 42 Me. 9–21; *Adams* v. *Morse*, 51 Me. 497, 498; *Cunningham* v. *Knight*, 1 Barb. 399–407; *Gould* v. *Glass*, 19 Barb. 179–92; *Waffle* v. *Goble*, 53 Barb. 517–22.) The widow and children are estopped from questioning the validity of the will and codicil, not having contested the probate or the validity of the will within one year, and having for more than three years accepted the gifts, bequests, and legacies given to them by the testator in the codicil to his will. (Code Civ. Proc., secs. 1307, 1327, 1333, 1908; *Curtis* v. *Underwood*, 101 Cal. 661; *State* v. *McGlynn*, 20 Cal. 234, 262, 270–72; 81 Am. Dec. 118; *Will of Warfield*, 22 Cal. 51, 63; 83 Am. Dec. 49; *Rogers* v. *King*, 22 Cal. 71, 73; *Satter²-lee* v. *Bliss*, 36 Cal. 487, 506, 507; 2 Black on Judgments, sec. 633; *Carhart* v. *Harshaw*, 45 Wis. 340; 30 Am. Rep. 753, 756; *Knox* v. *Paull*, 95 Ala. 505; Freeman on Judgments, 4th ed., sec. 608; *Deslonde* v. *Darrington*, 29 Ala. 92, 96; *Woodruff* v. *Taylor*, 20 Vt. 65, 76; *Colton* v. *Ross*, 2 Paige, 396, 400; 22 Am. Dec. 648, 652; *Will of Broderick*, 21 Wall. 503–15; *Brock* v. *Frank*, 51 Ala. 85, 89, 92; *Caujolle* v. *Ferrie*, 13 Wall. 465–72; *Bryant* v. *Allen*, 6 N. H. 116; *Luther* v. *Luther*, 122 Ill. 558–66; *Webster* v. *American Bible Assn.*, 50 Ohio St. 1; *Dublin* v. *Chadbourn*, 16 Mass. 433, 440, 441; *Tompkins* v. *Tompkins*, 1 Story, 547, 552, 559; *Mosely* v. *Tuthill*, 45 Ala. 621, 654; 6 Am. Rep. 710; *Kumpe* v. *Coons*, 63 Ala. 448, 454, 455; *Patton* v. *Allison*, 7 Humph. 320–28; *Estate of Sbarboro*, 63 Cal. 5, 9; *Castro* v. *Richardson*, 18 Cal. 478–81; *Irwin* v. *Scriber*, 18 Cal. 499, 504, 508; *Holliday* v. *Ward*, 19 Pa. St. 485, 489, 490; 57 Am. Dec. 671–76; *Goodman* v. *Winter*, 64 Ala. 410, 425, 429; 13 Am. Rep. 13; *Gaines* v. *New Orleans*, 6 Wall. 642, 703, 704; *Vanderpool* v. *Van Valkenburgh*, 6 N. Y. 190–98.)

HENSHAW, J.—William Walkerly died testate upon September 16, 1887, leaving as heirs at law his widow,

Blanche M. Walkerly, and a posthumous child born February 14, 1888.

This appeal is by the widow and the minor child from the decree of distribution rendered in the matter of his estate.

Upon June 2, 1887, Walkerly executed his will containing the following provisions:

" First. I declare that my entire estate is my separate property, having been acquired by me prior to my marriage.

" Second. I direct my executors hereinafter named to pay all my just debts and funeral expenses without unnecessary delay.

" Third. I give, bequeath, and devise to my dear wife, Blanche M. Walkerly, all my household furniture, books, pictures, jewelry, and plate, to her sole use and benefit forever. I also give and bequeath to her during her widowhood the free use and enjoyment of my residence, consisting of block number 121, with dwelling, stable, etc., thereon, situated in the city of Oakland. Upon the death or second marriage of my said wife, my trustees herein named are hereby directed to take possession and control of said dwelling and premises, and to manage and administer the same in the same manner and for the same purposes as they are directed in this will to manage and administer other property herein bequeathed and devised to them.

" Fourth. I hereby give and bequeath unto my dear wife, Blanche M. Walkerly, an annuity of two thousand four hundred ($2,400) dollars during her life, payable quarter yearly, in gold coin of the United States, and I do hereby make the said annuity a charge and burden upon that certain piece of real estate situate on the northwest corner of Post and Stockton streets in the city and county of San Francisco, known as the Walkerly block or building; and I do request my trustees hereinafter named to see that this annuity or allowance for the support and maintenance of my wife is promptly paid as herein directed.

"Fifth. I give and bequeath unto my grandnephew, Andrew Rumgay, the sum of two thousand dollars.

"Sixth. I do hereby give, bequeath, and devise unto Martin Bacon, Frank Barker, and Columbus Bartlett all the rest and residue of my estate of every description and wheresoever situated, *in trust*, for the following uses and purposes, to wit:

"1st. To take the possession, charge, and management of the property, and collect the rents, issues, and profits thereof.

"2d. Out of the income, or rents and profits, to pay quarter yearly the annuity or allowance hereinbefore made to my wife, Blanche M. Walkerly, for her support and maintenance.

"3. To pay to my sister Mary Windley, the sum of five hundred dollars per annum, during her life, payable semi-annually. Should my sister die before her husband, then, and in such case, the annuity left shall not cease and determine, but shall go on, and shall be paid to Stephen Windley during his lifetime.

"4th. To annually distribute the residue of the rents and profits of the trust estate, after deducting the sum of $2,400 to be paid to my wife, and the $500 to be paid to my sister Mary or her husband, and the taxes, insurance, and expenses, and charges of administration equally among my nephews and nieces. Upon the death of any nephew or niece his or her share shall go and be divided equally between his or her children, share and share alike.

"5th. To sell and convey all the trust property and estate at the expiration of twenty-five years from the date of my death, and to distribute the proceedings equally among my nephews and nieces, or their heirs, the descendants or heirs of any deceased nephew or niece taking collectively the share which their father or mother would take were he or she living.

"*Provided*, that no final sale or distribution of the trust estate be made during the lifetime of my wife, Blanche M. Walkerly, but only after the expiration of

twenty-five years from date of my death, and after her death. Upon the distribution of the proceeds of the sale of the trust estate among the parties entitled, then this trust shall cease and determine. Should any one or more of my said trustees die or resign, the remaining trustees or trustee must immediately appoint some suitable person to fill the vacancy, so as to keep the number of trustees at three.

"Seventh. I hereby nominate and appoint my nephews Martin Baker and Frank Barker, and my friend Columbus Bartlett, the executors of this my last will and testament, without bonds, with full power and authority to sell any part of my estate, real or personal, whenever, in their judgment or that of a majority of them, it is necessary or advisable to do so, excepting my residence in the city of Oakland, and the Walkerly building in San Francisco. In the event that the proceeds of the sales of my other property shall not prove sufficient to pay my debts, expenses of administration, etc., then, in such case, but not otherwise, I hereby authorize my executors to negotiate, execute, and place a mortgage on the Walkerly building, for the purpose of raising sufficient funds to pay the residue of my debts, etc.

"*It is my will* that the Walkerly block be transferred and delivered over to my trustees hereinbefore named so soon as can be conveniently done after my death, to be managed by them in pursuance of the trust hereinbefore created, and that my residence be not sold while occupied by my widow. Should she marry again, then my trustees are directed to take possession of the same, and manage it for the benefit and as part of the trust estate, with power to sell the same whenever in their judgment it is best to do so."

Upon September 7, 1887, he republished said will with the following codicil thereto:

"I, William Walkerly, of the city of Oakland, Alameda county, California, do make, publish, and declare this as and for a codicil to my last will and testament.

That is to say, being informed by my wife, Blanche·
Walkerly, that she is pregnant with a child by me, I
desire to make provision for such child, should it be-
born alive, and to make a more liberal and different
provision for my said wife than I have made in my
will to which this is a codicil.

"First. I hereby revoke the gifts, bequests, and de-
vises made in my said will to and for the benefit of my
wife, Blanche Walkerly, and, in lieu thereof, I do hereby
give and bequeath to her the sum of one hundred thou-
sand dollars ($100,000), to be paid to her when the
Walkerly block shall be sold, as described and provided
for in my will, and in the mean time to be a lien, mort-
gage, and burthen upon said Walkerly block, bearing
interest at the rate of five per cent per annum. Said
interest to be paid to her semi-annually by my trustees,
Martin Bacon and Columbus Bartlett.

"Second. I give, bequeath, and devise unto my child,
which shall be born unto me, lawfully begotten upon
the body of my wife Blanche Walkerly, the sum of one
hundred thousand dollars ($100,000), to be paid when
the Walkerly block shall be sold as described and pro-
vided for in my will, and in the mean time to be a lien,
mortgage, and burthen on said Walkerly block, bearing
interest at the rate of five per cent per annum. And
my trustees, Martin Bacon and Columbus Bartlett, are
hereby directed to pay the interest on this bequest semi-
annually to the guardian of such child.

"Third. I hereby nominate and appoint my nephew
Martin Bacon the guardian of the estate of any child
which shall lawfully be born to me, without bonds."

Upon the hearing of the petition for distribution the
court, first making certain findings of fact hereinafter
considered, rendered its decree, which itself contained
a recital of the findings of fact above adverted to, and
which, after further specifically setting forth the pro-
ceedings in probate showing that the estate was ready
for distribution and that the widow had remarried and

was the wife of William F. Burbank, made distribution
as follows:·

"It is hereby ordered, adjudged, and decreed that the
residue of said estate of William Walkerly, deceased,
hereinafter particularly described, and now remaining
in the hands of said executors, and any other property
now known or which may hereafter be discovered which
may belong to said estate, or in which the said deceased
may have any interest, be and the same is hereby dis-
tributed unto Martin Bacon, Frank Barker, and Henry
Davis Hawks, in trust, for the following purposes and
uses, to wit:

"First. To take the possession, charge, and manage-
ment thereof, and to collect the rents, issues, and profits
thereof.

"Second. Out of the income or rents or profits of
said trust estate, to pay semi-annually $2,500 to Blanche
Walkerly-Burbank, formerly Blanche M. Walkerly, and
$2,500 to William Martin Walkerly, a minor, and to dis-
tribute annually the residue of the rents and profits of
said trust estate, after the aforesaid payments and ex-
penses of the trust property have been paid equally
among the nephews and nieces of said William Wal-
kerly, deceased, and upon the death of any nephew or
niece his or her share to be divided equally between
his or her child or children, share and share alike.

"Third. To sell and convey all the trust property
and estate as soon as practicable, and convert the same
into money, and distribute the same as follows:

"1. Out of the proceeds obtained from the sale of the
Walkerly block in San Francisco, hereinafter mentioned,
$100,000 to Blanche Walkerly-Burbank, with interest
thereon from the 27th day of November, 1893, at the
rate of five per cent per annum, payable semi-annually.

"2. Out of the proceeds obtained from the sale of the
Walkerly block in San Francisco, $100,000 to said Will-
iam Martin Walkerly, a minor, with interest thereon
from the 27th day of November, 1893, and after deduct-
ing therefrom said sum $2,000 paid as attorney's fees to

Arthur Rodgers, the attorney of said minor, appointed heretofore by this court, and interest as stated in the decree.

" 3. The remainder of the proceeds of the sale of said Walkerly block in San Francisco, and all other property of said estate, to be equally divided among the following-named persons." The nephews and nieces and the children of deceased nephews and nieces are then named, and their respective shares allotted to them.

The residue so distributed to the trustees comprised the Walkerly block, block 121 in Oakland which had been set apart to Blanche Walkerly and the child as a homestead during her widowhood, and personal property consisting of moneys to the amount of four thousand six hundred and fifteen dollars, and certain stock certificates, judgments, and claims of considerable amount, but small actual value.

The first proposition urged by appellants against the decree may be thus stated: The decree declares trusts other and different from those set up by testator in his will. The trusts sought to be established by testator in his will are void.

The trust declared by the decree, read by itself and apart from the will whose provisions it is supposed to formulate, is legal and requires no independent consideration. But does it fairly interpret and represent the trusts sought to be created by the will? This vital point must first receive attention.

Omitting from present consideration the language of the codicil, Walkerly bequeathed and devised the residue of his estate to the trustees named upon certain defined trusts: 1. To pay an annuity of two thousand four hundred dollars to his widow during her life, making the annuity a charge upon the Walkerly block; 2. To pay an annuity of five hundred dollars a year to his sister during her life, and upon her death to her husband during his life; 3. Annually to distribute the remainder of the net income and profits of the estate to testator's nephews and nieces, and, upon the death of

any nephew or niece, to distribute his or her share among the children of such decedent. The trusts so declared belong to those classes of express trusts which as to real property are alone permitted to be created by our statutes. (Civ. Code, sec. 857, subds. 2, 3.) So far, then, as concerns their *objects* and *purposes* up to this point they contravene no law and are undoubtedly legal.

But there is still to be considered the life of the trust —the event upon the happening of which, or the time upon the arrival of which, the testator has declared it shall cease and determine. These provisions are found in sections 5 and 7 of the will above quoted. At the expiration of twenty-five years from the date of testator's death the trustees are required to sell all the trust property, and to divide the proceeds among the then living nephews and nieces, or their heirs, the " descendants or heirs" of a deceased nephew or niece taking collectively the share of the ancestor. That there may be no room for construction of his meaning as to when the sale shall be made, the testator further declares in the same connection that "no final sale or distribution of the trust estate shall be made during the lifetime of my wife, Blanche M. Walkerly, but only after the expiration of twenty-five years from date of my death, *and after her death.*"

This language is certain, precise, and free from doubt. The testator had left, as a legacy to his wife, an annuity of two thousand four hundred dollars, the payment of which was made a charge upon the most valuable portion of his estate, the Walkerly block. His special purpose was to preserve this property unaliened and inalienable for at least twenty-five years; for a longer period if his wife should live longer, but, if she should die sooner, still for twenty-five years. This purpose is made manifest, not only from the clauses of the trust already discussed, but in addition by the exemption of this property from the operation of the power of sale conferred in the seventh paragraph of the will. To the

grant of power to sell, therein made, is expressly at-
tached a reservation excepting this property.

Turning now to the codicil, which is to be construed
with the main instrument, it will be seen that the tes-
tator's declared purpose therein is to make a more lib-
eral provision for his widow and for the child with
which he has been informed she is pregnant. This he
does by revoking the annuity and giving her a present
legacy of one hundred thousand dollars, with payment
only deferred. It is to be paid "when the Walkerly
block shall be sold *as described and provided for in my
will*," and in the mean time to be a charge upon that
property. There is here not only no modification of
the original time of the sale of this land and the ex-
tinguishment of the trust, but the provisions of the
will in this regard are referred to with particularity as
fixing the time of payment. The circumstance that the
time of payment thus fixed must be after the death of
the widow, and that therefore the legacy could not be
paid to her, cannot affect or modify the terms of trust.
The legacy is put wholly without and made entirely in-
dependent of the trust except as to the date of payment.
It is a present gift, vesting immediately, and, if the con-
dition deferring the time of its payment is repugnant
to it as being impossible upon its face, the condition
would be void. (*Hone* v. *Van Schaick*, 20 Wend. 568;
*Oxley* v. *Lane*, 35 N. Y. 350.) In passing may be
pointed out the radical and important distinction be-
tween the present gift to the wife and child each of one
hundred thousand dollars, to be paid *when* the Walkerly
block is sold, and the future interests of the nephews
and nieces to whom nothing was directly given. All of
the residue was devised to the trustees, who were to sell
as provided, and, upon sale, to distribute the proceeds to
the nephews and nieces who should be then alive, and
the "descendants or heirs" of those who might be
dead.

The legacy to the child presents no features meriting
special attention.

No other conclusion, therefore, can be reached than that the general purpose of the testator as to all his property, clearly expressed by his will, was that it should be held by the trustees for twenty-five years before distribution, and that his special purpose as to that particular property called the Walkerly block was that in no event should it be sold or aliened before the expiration of twenty-five years from his death.

But the trust estate consisted: 1. Of the Walkerly block; 2. Of the homestead block 121 in Oakland; and 3. Of personal property—and, as the terms and conditions of the trusts are not uniform as to these, a separate and more particular consideration of them and of the law bearing upon them becomes necessary.

We proceed to consider:

1. The trust declared upon the Walkerly block.

This property comprises by far the greater portion in value of the testator's estate. It was devised to the trustees upon the trusts indicated, namely, to manage the property and apply the proceeds for the use of the persons designated, and, at the expiration of twenty-five years, or if the widow should at that time be alive, then upon her death, to sell the property and distribute the proceeds among the then living nephews and nieces and the "descendants or heirs" of those who might be dead. The purposes indicated come within the purview of subdivisions 1 and 3 of section 857 of the Civil Code. The fatal defect in the trust is that it provides for an absolute period of years for its determination, during which period the power of alienation is suspended.

"The absolute power of alienation cannot be suspended, by any limitation or condition whatever, for a longer period than during the continuance of the lives of persons in being at the creation of the limitation or condition." (Civ. Code, sec. 715.)

"Every future interest is void in its creation which, by any possibility, may suspend the absolute power of alienation for a longer period than is prescribed in this

chapter. Such power of alienation is suspended when there are no persons in being by whom an absolute interest in possession can be conveyed." (Civ. Code, sec. 716.)

"The suspension of all power to alienate the subject of a trust, other than a power to exchange it for other property to be held upon the same trust, or to sell it and reinvest the proceeds to be held upon the same trust, is a suspension of the power of alienation, within the meaning of section 715." (Civ. Code, sec. 771.)

"The delivery of the grant, where a limitation, condition, or future interest is created by grant, and the death of the testator, where it is created by will, is to be deemed the time of the creation of the limitation, condition, or interest, within the meaning of this part of the code." (Civ. Code, sec. 749.)

It would seem as though all need of discussion were foreclosed as to the trust under consideration by the plain terms of the code above set forth, yet, because of the great value of the property involved, and the serious consequences which must follow to the interests of respondents, it would perhaps be unjust to leave this consideration without further amplification. We will, therefore, discuss, so far as we have been able to follow them, the propositions made by respondents in support of this trust.

A perpetuity is any limitation or condition which may (not which will or must) take away or suspend the absolute power of alienation for a period beyond the continuance of lives in being. The absolute power of alienation is equivalent to the power of conveying an absolute fee. (Chaplin on Suspension of Alienation, sec. 64.) The law against the suspension of the power of alienation applies to every kind of conveyance and devise. It applies to all trusts, whether created by will or deed, whether providing for remainders or executory devises, or, as here, merely restraining the power of alienation for a fixed period of years, and then providing for sale with gift over. In short, it "covers the entire

field of estates, interests, rights, and possibilities."
(Chaplin on Suspension of Alienation, sec. 2.)     Says
Perry: "A perpetuity will no more be tolerated when it
is covered by a trust than when it displays itself undis-
guised in the settlement of a legal estate" (Perry on
Trusts, sec. 382), and section 771 of the Civil Code is
but an enactment of this rule,

Every express trust, valid in its creation, vests the
whole estate in the trustees.  The beneficiaries take no
estate or interest in the property, but may enforce the
performance of the trust.  (Civ. Code, sec. 863.) . If this
trust be not valid in its creation, the trustees would take
no estate, but neither would the beneficiaries whose
rights are dependent upon the validity of the trust.  If
it be valid, then the "whole estate" vests in the trus-
tees.   The "whole estate," as has been pointed out
(Embury v. Sheldon, 68 N. Y. 227), means the whole of
such an estate as is necessary to the performance of the
trust.  In the one under consideration it embraces the
whole legal and equitable estate which the testator en-
joyed, since no less would be sufficient to enable the
trustees to carry out the purposes: 1. To apply the
income for twenty-five years (Civ. Code, sec. 857, subd.
3); and 2. At the expiration of that time to sell the
property and dispose of the proceeds.  (Civ. Code, sec.
857, subd. 1.) The beneficiaries herein then take no
estate as such, their interest being the right to the en-
forcement of the trust.

But, if we understand the position of respondents, it
is contended that the nephews and nieces take a future
estate, which future estate is vested and is alienable, and
that therefore it is a valid estate, since only those future
interests are void which by possibility may unduly sus-
pend the power of alienation.  Following this argument,
and for this purpose treating the interest of the bene-
ficiaries as a future interest or estate within the con-
templation of the code (Civ. Code, sec. 716), it may be
first suggested that all expectant estates, whether vested
in interest, or contingent with a vested right, or entirely

contingent, pass by succession, will, and transfer, like present estates and interests. (Civ. Code, sec. 699.) But the fact that such interests may pass does not relieve from the operation of the rule, unless there are persons in being who, by combining and conveying all their distinct interests created by the original grant or devise, can pass an absolute interest in possession. Conceding that the future interest of the beneficiaries is vested in the sense in which remainders are spoken of as vesting, and that the interest would thus be alienable, it still is not such an interest as would by transfer carry an absolute interest in possession. As is pointed out by the court in *Vanderpoel* v. *Loew*, 112 N. Y. 167, the vesting of an estate involves absolute alienability only so far as that particular estate is concerned. The fact that a given remainder is vested renders it absolutely alienable, so far as it is itself concerned, but the absolute fee may at the same time be inalienable. Therefore, to convey this absolute interest in possession the beneficiaries would be compelled to unite with their conveyance that of the trustees in whom the fee is vested. But the trustees cannot convey until the expiration of twenty-five years. An attempt by them to convey before that time would contravene the trust, and be a void act (Civ. Code, sec. 870), and so even by this method of progression our path leads to that barrier of perpetuity which cannot be surmounted.

So, even though the beneficiary should be a remainderman under such a trust as this, he still could not alienate the land within the trust period so as to avoid the statute. Such a trust cannot be terminated or destroyed during the period fixed for the existence, even by the consent and joint act of all the trustees and beneficiaries. (*Douglas* v. *Cruger*, 80 N. Y. 15; *Penfield* v. *Tower*, 1 N. D. 216.)

Hence the question whether the interest of the beneficiaries is contingent or vested is here of no possible moment. The absolute alienability required by section 715 of the Civil Code does not imply vesting, and it

affords no escape from the operation of the rule, because the interest which the beneficiaries take may be relieved from uncertainty as to persons or event. When so relieved the interest may be said to be vested. But it is not such a vesting nor yet such an interest as removes the bar of the statute, since all of the interests and estates, contingent and vested, cannot convey the fee so long as the terms of the trust from which alone their interests are derived stand in the way. The perpetuity here does not result from too remote limitations or the failure of future estates to vest, but it arises by the direct act of the testator in forbidding his trustees to alienate for a period not tolerated by the law.

Nor is the twenty-five years a "condition" which may be rejected as void because repugnant to the interest conveyed. It is a limitation, a restraint upon alienation, forming an integral part of the trust. To the constitution of every valid express trust it is essential that there should be a trustee, an estate conveyed to him, a beneficiary, a legal purpose, and a legal term. While equity will in certain instances make good the absence of the first requisite, if the second or third be lacking, or the fourth or fifth be illegal, the trust itself must fail. Of the express trusts permitted by the statute there are two great classes, one of which does, and the other does not, involve a suspension of the power of alienation. Under the first class are included all those whose very purpose and essence it is that the land shall not be alienated by the trustee during the trust term, and where, consequently, a sale by him would be in direct contravention of the trust. In the case of such express trusts as occasion the suspension of the absolute power of alienation, the term of duration is the vital subject of inquiry. (Chaplin on Suspension of Alienation, 146, 148.)

Trusts such as these under consideration in their very nature operate to suspend the power of alienation. That power must be suspended in the one case, while the trustee is distributing the rents and profits, and in the

other case it is suspended by the express duty imposed upon the trustee to sell only at the expiration of a fixed period.

The law has seen fit to insist that the measure of the period of suspension shall be lives in being, and it will not countenance the suspension for any fixed period or term of years not depending upon the duration of life, for the sufficient reason that during the time of such a limitation, however short, the person or persons capable of conveying the absolute interest might die—a possibility not to be endured. So it happens that whenever a testator, through temerity or ignorance, violates the plain mandate of the statute, as in this case, and creates a trust by which the absolute power of alienation is sought to be suspended for a term of years, he must pay the penalty of his rashness or folly in the destruction of his cherished design.

Such, though grievous to the beneficiaries, have always been the necessary and logical decisions of the courts, and the books abound in cases which, while monuments to the learning of the judges, are equally monuments to the persistency of testators or to the recklessness of their advisers. Thus it is, as is said by the Vice-Chancellor in *Field* v. *Field*, 4 Sand. Ch. 528, that "the statute restricts the suspension of alienation and ownership to lives and lives only. It does not admit of a suspense for a term of years, however short, nor one dependent in part upon life and in part upon a fixed period of time." The rule has been applied in New York alone to terms of varying length of from twenty-one years to three, from the leading case of *Hone* v. *Van Schaick, supra*, through a long and unvarying series of judicial determinations (Bolles' Suspension of Alienation, *note* to section 78 *where cases are collated*), while in other states the authorities are as uniform, if not so numerous. (*Mandelbaum* v. *McDonnell*, 29 Mich. 78; 18 Am. Rep. 61; *Farrand* v. *Petit*, 84 Mich. 671; *De Wolf* v. *Lawson*, 61 Wis. 473; 50 Am. Rep. 148; *Penfield* v. *Tower, supra*.)

Nor can the doctrine of equitable conversion be invoked to aid this trust. If we understand the argument of counsel upon this point, they urge that under that doctrine the land should be treated as now sold and converted into personal property, and that such a trust in personal property would be valid, and that, therefore, this trust must be upheld. This would not only be a surprising application of the doctrine, but would be a novel and startling method of evading the law against perpetuities by invoking an equitable fiction. The rule of equitable conversion merely amounts to this, that where there is a mandate to sell at a future time, equity, upon the principle of regarding that done which ought to be done, will for certain purposes and in aid of justice consider the conversion as effected at the time when the sale ought to take place, whether the land be then really sold or not. But whenever the direction is for a future sale, up to the time fixed the land is governed by the law of real estate. (*Savage* v. *Burnham*, 17 N. Y. 561; *Vincent* v. *Newhouse*, 83 N. Y. 505; *Underwood* v. *Curtis*, 127 N. Y. 533; *De Wolf* v. *Lawson*, *supra*.) Whether a trust of personalty for a fixed term would be valid is a matter of consideration hereinafter.

The intestacy of the testator as to the Walkerly block is the harsh result which must follow this void trust, and the property will descend to his heirs. It is true that such was not the testator's intent, but a testator must do more than merely evince an intention to disinherit before the heirs' right of succession can be cut off. He must make a valid disposition of his property. (*Harbergham* v. *Vincent*, 2 Ves. Jr. 204; *Hawley* v. *James*, 16 Wend. 150; *Haynes* v. *Sherman*, 117 N. Y. 433.)

2. The trust as to block 121.

The first objection presented by the appellants to the disposition of this land made in the decree is that it has been removed from administration, and no longer forms a part of the residue of the estate or of the trust property.

The argument in support of the contention is based upon the following facts: Upon application the court set apart block 121 as a homestead to the widow and minor child " during her widowhood." This life estate was terminated by her marriage to William F. Burbank, whose wife she now is. Section 1468 of the Code of Civil Procedure; declares that if the property assigned as a homestead be selected from the separate property of the deceased, the court can only set it apart for a limited period to be designated in the order, and the title *vests in the heirs* of the deceased, subject to such order.

The claim of the widow, therefore, is that the title to block 121, notwithstanding the testamentary disposition made of the property to the trustees, vested in herself and child, by virtue of this section, *eo instanti* when the court made the homestead order, and that consequently her subsequent marriage, while it terminated the homestead right, had no effect upon the title to the property which had vested in her as an heir of her husband. Against this respondents urge that the word " heirs" was not used in the section to exclude devisees, and that it should be construed as broad enough to include them.

The right of testamentary disposition is itself only a right given by statute, and may be restrained, modified, or abrogated entirely. But still it is unquestionably the general policy of our law to allow full power of testamentary disposition—saving as that power may be abridged by specific enactments. The code provisions making disposition of the homestead and of estates in value less than fifteen hundred dollars are instances of the limitations put by the legislature upon the free power of testamentary disposition, and from the lack of uniformity and harmony in their terms these homestead provisions have presented questions of much doubt and vexation to the courts.

The present question is one of that kind. Did the legislature mean by section 1468 to do more than declare the ordinary rule of succession and descent in

cases of intestacy, but subject always to the right of testamentary disposition; or did it mean that, as to separate property upon which the homestead character had been impressed by order of court, any devise would be void and the property must descend to the heirs?

The latter view places a limitation upon a testator's power, and removes from the disposition of a will any property which may chance to be selected and set apart to the widow and children, and may thus defeat by a curious uncertainty the object of a testator's worthy bounty. It may do more than that, as in this case. The widow, to whom a homestead of the estimated value of thirty thousand dollars had been set aside "during her widowhood"—the time in contemplation of a beneficent law during which she may be dependent and is entitled to maintenance from the estate of her deceased husband—by marrying again, while thus cutting off any further right of homestead or maintenance, is enabled to obtain a perfect and untrammeled fee in the property which her husband had devised to others, and which in the general contemplation of the law was to be set aside to her use only during the limited period of her widowhood and dependency. But nevertheless such an interpretation is borne out by the language of the statute. Upon the other hand, the former view is certainly more in accord with the apparent policy of the law, but the language of the section before and after amendment to its present form stands in the way of its adoption.

Where a homestead has been selected from the separate property of a husband during his life and without his consent, it goes upon his death to his "heirs and devisees," subject to the power of the court to assign the same for a limited period, under section 1265 of the Civil Code, while by section 1474 of the Code of Civil Procedure the same property vests in "the heirs," subject to the same power of limited assignment in the court. It is not easy to see, as this court has before said, why the rule of devise or descent as to a home-

stead upon separate property declared during life should differ from that which obtains in case it be set apart after death, and it is still less easy to perceive why the two sections last above cited should be left inharmonious, but nevertheless if the legislature has seen fit to prescribe different rules it is the bounden duty of the court to give them effect.

This the court was reluctantly driven to do in *Mawson* v. *Mawson*, 50 Cal. 539. Section 1465 of the Code of Civil Procedure at that time provided that the homestead on being set apart should be the property of the surviving widow or husband, if there were no minor children. Mawson died intestate. There were no minor children. A homestead was set apart to the widow out of the separate property. The deceased left two children of a former marriage—heirs at law—and they appealed. This court adjudged that the title vested in the widow to the exclusion of the heirs at law. By the amendment to section 1465, adopted in 1881, the title under such circumstances is now declared to vest in the heirs; and we cannot, without doing violence to the meaning of the word, hold that it includes devisees; nor can we, without doing equal violence to all rules of statutory construction, read into the section the words "or devisees." (Code Civ. Proc., sec. 1858.) The section is plain and unambiguous. Its meaning is in no way uncertain, and when that meaning is found nothing is left but to declare it. The wisdom of the law is for the legislature alone.

It is concluded, therefore, that the section is a limitation upon the power of testamentary disposition, and operates to vest the title to the homestead in the heirs at law, and so to withdraw it from the disposition made by the testator under his will.

Such being the case, the trust in block 121 fails for lack of subject matter. But were the other view to obtain, and the property to be considered a part of the trust, the position of respondents would not be bettered.

For the trust as to this land differs from that of the

Walkerly block only in permitting a sale of the property before the expiration of the twenty-five years. In all other essential respects the trusts are the same. In the event of a sale still the proceeds are to be held and invested until distribution, which, as in the case of the Walkerly block, is deferred to a fixed time.

The mere power of sale does not, under such circumstances, save the provisions of the trust, since the proceeds of the sale are still to be held in violation of the law. (Civ. Code, secs. 715, 771; *Estate of Hinckley,* 58 Cal. 457, 481; *Hawley* v. *James, supra; Haynes* v. *Sherman, supra.*)   Nor is it the law of this state that the provisions against restraints upon alienation do not apply to trusts of personal property, as we will proceed to consider.

3. The trust in personal property.

The essential difference in this state between trusts in real property known as express trusts, and those in personal property are: 1. The former can only be of the kinds permitted by the statute, and no others (Civ. Code, sec. 857), while the latter may be created generally for any purpose for which a contract may be made (Civ. Code, sec. 2220); 2. The former must be created and declared by writing (Civ. Code, sec. 852), while the latter may rest upon parol.   (Civ. Code, sec. 2222.) But to all trusts, whether of real or personal property, the limitation upon the suspension of the power of alienation expressed in section 715 of the Civil Code directly applies.   The section is found in division II, part 1, title II, of the code where the lawmakers are dealing, as expressly declared, with the modifications of ownership and restraints upon alienation of "property in general."   Again, section 771 of the Civil Code shows plainly the applicability of the law to personal property.   For if it be only the suspension of the power to alienate real property which is under the ban, power to sell the realty would relieve the difficulty, and yet it is by that section expressly declared that personal property held after sale under the terms of the original trust

operates to suspend the power of alienation, under section 715 of the Civil Code. And finally, the applicability of section 715 to trusts in personal property has often been recognized, and never questioned. (*Estate of Hinckley, supra; Goldtree v. Thompson*, 79 Cal. 613; *Williams v. Williams*, 73 Cal. 99; *Whitney v. Dodge*, 105 Cal. 192.)

We are not unmindful of the fact that the statutes of the state of New York in express terms put a limitation upon the power to suspend the ownership of personal property. (1 N. Y. Rev. Stats., sec. 773, subd. 1.) And we have not overlooked the circumstance that the supreme courts of Michigan and Wisconsin have uniformly held that their statutes similar in terms to our code provisions do not apply to trusts in personal property. But it is to be observed that the legislature of this state, in adopting section 715 of the Civil Code, placed it where it must apply, and, therefore, made it apply to " property in general," while the corresponding section in the Michigan statutes (Howell's Annotated Statutes of Michigan, sec. 5531, subd. 15), and that of the Wisconsin statutes (Wis. Rev. Stats., sec. 2039), are found in the chapters of the law relating to estates in real property, and so have been construed by the courts to be applicable only to trusts in such property. (*Toms v. Williams*, 41 Mich. 552; *Dodge v. Williams*, 46 Wis. 70; *Palms v. Palms*, 68 Mich. 355; *De Wolf v. Lawson, supra.*)

In those states it is held that, as to trusts in personal property, the common-law rule still obtains. And it is for the application of this rule that respondents here contend. But even this would not avail to save the trust. The common-law rule against perpetuities does not, as counsel argue, apply only to landed estates. Executory devises, springing and shifting uses, and trusts whether of realty or personalty were all within its terms. (1 Jarman on Wills, c. 9; Lewis on Perpetuities, 159; Perry on Trusts, secs. 377, 384; Lewin on Trusts, c. 7; Gray on Perpetuities, sec. 202; 4 Kent's Commentaries, 271; *Cadell v. Palmer*, 1 Clark & .F. 372.) As

Jarman states: "To the test of the rule settled by *Cadell* v. *Palmer*, *supra*, every gift of real or personal estate, by will or otherwise, must be brought." (1 Jarman on Wills, 217.)

By the Thelluson act (39 & 40 Geo. III, c. 98) the maximum period during which the power of alienation could be restrained was lives in being and twenty-one years and nine months. Tested by that act still would this trust be invalid.

We hold, however, that section 715 of the Civil Code not only applies to trusts in personal property, but also that it shortens the period permitted by the common law to lives in being. Private trusts in personal property which suspend the power of alienation must be limited like private trusts in realty to lives in being, and the trusts here are consequently destroyed by the same vice which invalidated those first considered.

We have thus far construed the trusts without noticing some objections urged by respondents against the right of appellants to be heard. Of those the first is that appellants are estopped from attacking the validity of the trusts. No estoppel is found against the appellants, but the facts which were claimed to establish one are set forth in the findings. Briefly, those facts are that the widow and child had been receiving a family allowance. By stipulation it was agreed that the order of family allowance should be vacated, and that the executors would thereafter pay the widow and child each four hundred and sixteen dollars and sixty-six and two-thirds cents per month; being at the rate of five per cent per annum upon the legacies provided to be paid in the codicil to the will, and the amounts so paid should upon distribution be treated as payments of interest upon account of said legacies. The court made its order in accordance with the stipulation. No mention is here made of the trusts, and no waiver, express or implied, of the right to demand a legal interpretation of them could thus arise. The legacies, as has been pointed out, were not within the trusts, but were independent and

valid bequests. The fact that under these circumstances the widow had elected to take under the will would have estopped her from denying the validity of the instrument *as a will*, but did not and could not operate to estop her from insisting upon a due interpretation of the instrument. Appellants still stand affirming the validity of the will as a will, but insist that the trial court has not correctly interpreted some of its provisions.

It became the duty of the court for the first time upon distribution to give effect to the legal devises and bequests of the testator, and it could not even with the consent of the parties declare valid trusts such as these which are opposed to the express mandate and policy of the law. (Const., art. XX, sec. 9; *Estate of Hinckley, supra;* Civ. Code, 3513; Gray on Restraints on Alienation, sec. 21; 2 Blackstone's Commentaries, 174; Greenhood on Public Policy, 115.)

It is next urged that, as the court made findings concerning the testator's intent and decreed distribution in accordance with these findings, and as the findings are not attacked and will sustain the decree, and as "a volume of extrinsic circumstances bearing on the question was introduced without objection," these appellants are not in a position to combat the decree. But as to this it need only be said that it is the duty of the court in all cases to ascertain the intent of the testator from the language of the will, and the occasions which render parol evidence of circumstances admissible do not here arise. (Civ. Code, secs. 1318, 1340.)

The terms of the will are plain and unambiguous. It may be said of all wills that the testator's intent is to make a valid disposition of his property, and as to most provisions which are decreed invalid there is no difficulty in arriving at his actual meaning and intent. But a court is not therefore authorized to modify or vary the plain language of the testator, and thus create a new and valid will for him, even if it were certain that the testator would have adopted the interpretation of the court had he known his own attempt was invalid.

So of the trusts decreed by the court it may be said as was said in *Coster* v. *Lorillard*, 14 Wend. 349: "This would approximate nearer to the will of the testator than any other proposed alteration. But, after a diligent inquiry, I have not been able to satisfy myself that there is any principle or decision that would authorize such an interference. It would be arbitrary and establish a precedent for courts not to construe wills according to the intent of the testator as derived from a consideration of the language used to express it, but to make a will for him, such a one as we undertake to presume he would have made, if advised that his own was void as against law. This I cannot consent to do. Better that the intent of a testator should fail in a particular case than that the court should assume such arbitrary and undefined discretion over his estate. If we cannot execute the whole will, or some distinct and independent portion of it, the whole had better be declared void. The law makes a better one than will usually be made by the court."

So, too, where the language of the provisions of a will is plain and unambiguous the courts are not permitted to wrest it from its natural import in order to save it from condemnation. (*Cottman* v. *Grace*, 112 N. Y. 299.)

The determination that the trusts are void renders unnecessary any consideration of the other points presented.

The trusts being void it follows, as to the property attempted to be devised in trust, that the testator died intestate. It therefore descends to the heirs living at the time of his death.

For the foregoing reasons the decree is reversed.

McFarland, J., Garoutte, J., Harrison, J., Temple, J., Van Fleet, J., and Beatty, C. J., concurred.

Rehearing denied.